SM



FILED

APR 11 2023 SH

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Kilroy WATKins #20220427033

23cv2273
Judge Seeger
Magistrate Judge Cummings
PC 1/ RANDOM

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

FRANCISCO RAMIREZ, Investigator,
DCFS, in his Individual capacity
ADRIENE HUDSON, Investigator,
DCFS, in her Individual capacity
ASHLEY ALLEN, Supervisor, DCFS,
in her Individual Capacity
SYLVESTER FULCHER, Area Administrator,
DCFS, in his Individual capacity
HARVEY POLICE/DETECTIVE SANDRA BAPTISTE,
in her Individual capacity
City of Harvey, Harvey Police
Department

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No:_____
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**

X    **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
     U.S. Code** (state, county, or municipal defendants)

_____    **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
         28 SECTION 1331 U.S. Code** (federal defendants)

_____    **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

A. Name: Kilroy Watkins

B. List all aliases: _____

C. Prisoner identification number: #202204270 33

D. Place of present confinement: Cook County Jail

E. Address: 2700 S. California Ave, Chicago, IL 60608

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: Francisco Ramirez

Title: Investigator

Place of Employment: Dept of Children & Family Servs

B. Defendant: Adriene Hudson

Title: Investigator

Place of Employment: Dept of Children & Family Servs

C. Defendant: Ashley Allen

Title: Supervisor

Place of Employment: Dept of Children & Family Servs CON'T

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                    Revised 9/2007

Addition page
Defendant(s)

D. Defendant: # Sylvester Fulcher
   Title:  Investigator
   Place of Employment: Dept of Children & Family Serv's

E. Defendant: Sandra Baptiste
   Title:  Detective / Investigator
   Place of Employment: Harvey Police Department

F. Defendant: City of Harvey
   Title:     City of Harvey
   Place of Employment: City of Harvey

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _Kilroy Watkins v. City of Chicago et al. 22 CV 0734l_

B. Approximate date of filing lawsuit: _3/10/2023_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _Kilroy Watkins_

D. List all defendants: _City of Chicago, Jane Doe Officer #1, Jane Doe officer #Two, DCFS Investigator Jaxyuline Phillips and DCFS Supervisor Sharon Richardson_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Northern District of Illinois_

F. Name of judge to whom case was assigned: _Nancy L. Maldonado_

G. Basic claim made: _Due Process violation and Fourth Amendment violation_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Still pending_

I. Approximate date of disposition: _open_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

**IV.** List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _Kilroy Watkins v. Sandra Baptiste, et al._ _22 CV 6377_

B. Approximate date of filing lawsuit: _11/15/2022_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

_Kilroy Watkins_

D. List all defendants: _Sandra Baptiste, Elijah Muhammad, Officer Kant, Dehbat Seriki, Bridget O'Brien, Nikki Carter-WoolFalk_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Northern District of Illinois_

F. Name of judge to whom case was assigned: _Joan H. Lefkow_

G. Basic claim made: _Fourth Amendment and Fourteenth Amendment - Due Process Violation_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Still Pending_

I. Approximate date of disposition: _Open_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

**IV.** **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is
involved, including names, dates, and places. **Do not give any legal arguments or cite any
cases or statutes.** If you intend to allege a number of related claims, number and set forth
each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets
if necessary.)

This 1983 complaint stems from Plaintiff, alleging
a violation of his rights under the fourteenth
Amendment of the Due Process Clause,
when the Illinois Department of Children and
Family Services (DCFS) made a finding
indicating that there was credible evidence
Plaintiff neglected and abused a child.
This case involves the investigation and
reporting system for child abuse and neglect
in Illinois, which is administered by DCFS.
The framework for the system is described in
the Illinois Abused and Neglected Child Reporting
Act (ANCRA), which requires DCFS to "protect the
health, safety and best interests of the child
in all situations in which the child is vulnerable
to child abuse or neglect." 325 ILCS 5/2 To
achieve this mandate, while investigating a
report of child abuse or neglect, DCFS

4

investigators Must determine whether credible evidence supports the allegation. DCFS regulations define "credible evidence" to mean "the available facts when viewed in light of surrounding circumstances would cause a reasonable person to believe that a child was abused or neglected" Ill. Adm. Code. tilt 89 §300.20

The Seventh Circuit has interpreted the "credible evidence" standard to require DCFS investigators to "take into account all of the available evidence that tends to show that abuse or neglect did or did not occur," including both inculpatory and exculpatory evidence, because "only then may the investigator decide whether that totality of evidence would cause a reasonable individual to believe that a child was abused or neglected."

If DCFS determines that credible evidence exists to support the allegation, the report is designated as "indicated." If there is No credible evidence to support the allegation, DCFS designates the report as "unfounded"

325 ILCS 5/3. DCFS maintains the indicated reports on a state central register subject to a reticulated retention schedule. 325 ILCS 5/7.7

Because the potential ramifications of an indication of child abuse are so severe for child care providers, such workers subject to DCFS investigation are entitled to special process. In their initial investigations, DCFS investigators are 'required' to determine whether the alleged perpetrator is a child care worker, Ill. Adm. Code. tit 89 § 300.160 (c)(1) and 336.20, State regulations define a "child care worker" as any person who is employed to work directly with children" *** which includes schools, school aids, school teachers administrators *** Ill. Adm. Code, tit 89, §336. 20. Under the state regulations, a person is to be considered a child care worker if he/she "has applied for, or will apply within 180 days for, a position as a child care worker; is enrolled in, or will commence within 180 days, an academic program that leads to a position as a child care

6.

Revised 9/2007

worker; or has applied for a license as a child care worker."

Investigator are to provide the alleged perpetrator with a notice of the investigation ("CANTS Notice") and explain the information contained in the required CANTS Notice forms, including the "special rights" to which child care workers are entitled. Alleged perpetrators who are childcare workers are entitled to a one-hour administrator teleconference before any decision to indicate is made. "The administrator's tele-conference provide the alleged perpetrator the opportunity to present documentary evidence or other information that supports his or her position and provides information to assist the Department in making the most accurate decision regarding the allegations." Ill. Adm. Code, tit 89, § 300.160(c)(1)(A), IF a DCFS investigator intends to make a recommendation to designate a child care worker's

7.

report as "indicated" for abuse or neglect, the investigator MUST, prior to the administrator's teleconference, schedule an in-person meeting to inform the alleged perpetrator of the decision that the case be indicated and to provide a CANTS Notice and a related investigative summary. Ill. Adm. Code. tit 89, § 300.160 (c)(2)(D).

A person may appeal an indicated report to an administrative law judge ("ALJ"), who determines at a full administrative hearing whether the report should be amended or removed from the state's central register. During the hearing, both DCFS and the alleged perpetrator may present evidence and call, and cross-examine witnesses.

DCFS bears the burden of showing that the indicated finding is supported by a preponderance of the evidence. Ill. Adm. Code. tit 89, § 336.100(e) Child care workers are entitled to expedited administrative appeals, to be completed within 35-days of the receipt of the request for the appeal. Ill. Adm. Code. tit. 89, § 300.160(s)(i)(B)

While an appeal is pending, however, the "indicated" report remains in the central register. School superintendents are permitted to access the central register

to do background investigations. See 325 ILCS 5/11.1(a)(11) Prospective employees of a child care facilities who would have "any possible contact with children in the course of their duties" must, as a condition of employment, authorize prospective employers to check the central register "to ascertain if such applicant or employee has been determined to be a perpetrator in an indicated report of child abuse or neglect."

-Factual Background-

(1) On or about June 25, 2021, Plaintiff was in a co-parenting relationship with his then girlfriend, Marisa Saucedo, who is the biological mother of M.M, a 12 year old minor.

(2) While in this relationship, Plaintiff took on the responsibility as the co-guardian of M.M. and her mother added Plaintiff name to the school personnel, as well as the emergency contact list. Plaintiff participated in all of M.M. school sports and activities.

(3) Plaintiff was identified as M.M. father by the mother, to the medical staff at University of Chicago, during the appointments with M.M psychiatrist, and assisted her doctors with her (M.M) therapy for a number of

9.

cognitive developmental issues, including but not limited too; Autism, ADHD, Pica and personality disorder. See Attached Doc # 1-thru-4

(4) Plaintiff worked closely with M.M doctor when it came to prescribing the correct medication for M.M mental illness. see Attach Doc # 1-thru-4

(5) During Plaintiff time spent as M.M. guardian, he witness M.M. struggle to interact with her peer's, Notable associate consequence with her actions, retain information, which cause for her to struggle with school work, fight with her mom over household chores, erratic and compulsive behavior, including pulling pranks (regardless of time, or circumstances, Fabericating stories, spinning in circles and speech impairment.

(6) On some occassions, Plaintiff witnessed M.M throw a bad tantrum, mental breakdown and/or go Completely into an angry rage, crying episode and complete emotional shutdown, whenever her mother attempted to discipline her.

(7) Plaintiff and M.M. mother often explain to M.M. therapist, how difficult it was to recognize and/or deal with M.M. symptoms/disorder and continue to seek psycholosial assistance, at the time of the DCFS investigation.

10.

(8) On or about June 25, 2021, M.M. biological brother, Manny Saucedo (herein after Manny) slept over one weekend, in which he did Occasionally in order to spend time with his mother and sister, since moving out a few years earlier.

(9) Plaintiff would sleep over a relative house, during Manny sleep over weekends, since he wanted time with his mom and sister.

(10) Manny was not informed by Plaintiff nor his mother about the severity of M.M mental health condition and constant visits with her psychiatrist for evaluation and treatment, nor was he aware of M.M. numerous personality disorders, including Autism.

(11) Furthermore, Manny was not fully familiar with M.M symptoms nor did he know the purpose of her prescribed medication or how often she must take meds.

(12.) On or about the morning of the 25th of June, Manny alleges that M.M told him that she was being sexually abused by Plaintiff, Manny told his mom what he was allegedly told by M.M and immediately became angry, and wanted Plaintiff thrown out the house (i.e. Plaintiff had returned

back to the house, that Sunday morning).

(13) Plaintiff and Manny's mother tried to calm Manny down and learned more about what he was allegedly told because M.M. have falsely accuse others of mistreating and/or inappropriately touching her.

(14) On or about April or May 2021, M.M. had a friend named Gigi, who often visited her cousin across the street from M.M. house, in which during one visit, Gigi told M.M. and her friends about accusing her step-father of sexually abusing her.

(15) To Plaintiff Knowledge, this was the First time Someone shared a story about sexual abuse with M.M., prior to June 25th.

(16) When Plaintiff and M.M. mother tried to tell Manny that his sister allegations sound extremely similar to her friend Gigi's account of what she told the girls, and M.M. mental illness, in which she (M.M.) would repeat things she hears or have been told but mix up the facts (i.e. Delayed Echolalia)

(17) Manny was to upset to make any sense of what Plaintiff and his mother was saying to him and he (Manny) simply wanted Plaintiff

12.

to leave the house and to avoid any
physical confrontation, Plaintiff decided
to leave.

(18) As soon as Plaintiff left the house,
Manny made his mother and sister go
to the hospital for an examination, however,
as soon as the medical personnel learned
of the purpose of M.M. visit, the hospital
was required by law to notify the Harvey
Police Department (HPD) and DCFS.

(19) DCFS sent investigator Adrienn Hudson
to interview mother and daughter, however,
prior to interview with M.M., DCFS Hudson
was fully informed by M.M. mother, that her
daughter was cognitive impaired with a number
of personality disorders, and is currently
seeing a psychiatrist, and has been prescribed
psychotropic medication.

(20) Despite what information M.M. moms shared
with DCFS Hudson, regarding M.M. mental health,
Hudson insist to interview M.M. in the absence
of her mother or a child psychiatrist.

(21) DCFS Hudson decide to administer her
own psychological evaluation of M.M. to determine
the minor cognitive developmental issues,

13.

this independent psy-evaluation was done for the sole purpose of determining if M.M. knew the difference between the color red and blue, and according to DCFS Hudson, this would mean that M.M. knew the difference between a truth and a lie, even though, M.M. told Hudson she had not taken her prescribed medication that day.

(22) At no time during interview with M.M., did DCFS Hudson seek the help of a child psychologist or physician of any sort, to learn more about M.M. cognitive disorder.

(23) DCFS investigator Hudson, next spoke with the treating physician Dr. Azim, regarding the pending investigation and learned that M.M. had no acute injuries, and rape kit was offered but mother decline.

(24) On or about June 28, 2021, DcFs investigator Francisco Ramirez notes that, he visited with M.M. and learned that she has a limited cognitive understanding (i.e. Autism spectrum disorder, a complex, lifelong neuro developmental disorder) and at the time of his interview with M.M, she

14.

believed that Plaintiff still resided in home, when in fact, Plaintiff had already move out.

(25) On July 1, 2021, DCFS Ramirez reached out to HPD Det. Sandra Baptiste, who also were the Youth Service Coordinator and Committee member with the Illinois Children Justice Task Force, a special committee appointed by the Director of DCFS (i.e. Baptiste is currently serving her second term on Committee '22-26') for her assistance with investigation.

(26) In accordance with DCFS Procedure 300.110, DCFS could delegate their investigation to law enforcement, to assist in the investigation with interviewing the accused perpetrator, Det. Baptiste role and responsibility was to contact Plaintiff, provide him a copy of the DCFS CANTS notice of investigation, and interview Plaintiff.

(27) On July 1, 2021, Ramirez checked in with Det. Baptiste to determine the status of the investigation, in which Det. Baptiste stated she arranged a forensic interview for M.M., but did not say anything about contacting Plaintiff for possible interview.

15.

(28) On or about July 9, 2021, DCFS Ramirez followed up with Det. Baptiste again to learn if she contact Plaintiff for an interview, according Ramirez, Det. Baptiste stated, that she learned that Plaintiff was on the Sex Offender Registry and can not be found.

(29) Plaintiff was paroled from the Illinois Department of Corrections ('IDOC') on January of 2019 and was required by law to Register on the Illinois Murderer and Violent Offender Registration. At no time prior to and/or during, DCFS investigation were Plaintiff ever convicted for a sex offense, which would have required Plaintiff to register as a sex offender.

(30) Det. Baptiste false statement about Plaintiff registration was highly prejudicial and created a bias against Plaintiff during the DCFS investigation into sexual abuse allegations, and encourage or instigate an indicated Finding against Plaintiff without affording an him opportunity to be heard or present exculpatory evidence. see Attached Doc # 5

(31) In addition, Det. Baptiste Further compound the bias when she stated to DCFS investigater

16.

~~●~~ that Plaintiff could Not be Found for
an interview, Det. Baptiste knew this statement
was false because Plaintiff called and spoke
with Det. Baptiste in July, during the DCFS
investigation, Plaintiff left his attorney cell-
phone number, in the likelihood that Det.
Baptiste would like to schedule an interview
with Plaintiff.

(32) Furthermore, during the time Det. Baptiste was
falsely claiming "I couldn't be found", Plaintiff
was literally hanging out in the lobby of the
Harvey Police Department, trying to catch-up
with his registration officer (Sgt. **Barbee**),
to change Plaintiff address. see Attach Doc #6

(33) Det. Baptiste knew or should have known that
her false statement to a DCFS investigator
during an open investigation would likely
create a bias towards Plaintiff and strongly
influence DCFS to indicate Plaintiff for
sexual abuse of a minor.

(34) On or about July 9, 2021, DCFS Ramirez
interviewed M.M. mother and learned the
following; (i) that M.M. said Plaintiff touched
her but M.M. would later state it was a 'prank',

17.

(2) M.M. continue to ask for Plaintiff, (3) M.M. has ADHD and Autism on the spectrum, (4) Mother believes that, one of M.M. friends 'Gigi' shared her story of being allegedly sexual abused with M.M. (5) 'Gigi' cousin Kevin told M.M. mother that, M.M. allegations against Plaintiff sound similar to 'Gigi' story.

(35) On or about September 8, 2021, Ramirez once again spoke with Det. Baptiste and according to Det. (1) M.M. mother knew Plaintiff was on a sex offender registry (i.e. which was fake) (2) mother don't believe daughter, (3) she still have not found the Plaintiff, (4) the case going to be a he/said, she/said situation.

(36) On or about September 21, 2021, Ramirez spoke again with M.M. mother and learned the following; (1) Mom states, again, its not that [she] don't believe her daughter but M.M. come back later and said it was a 'prank' (2) M.M. continues to ask for Plaintiff, (3) Mother asked M.M. repeatedly if anything happened to her and M.M. would say No!, (4) Mother says she never heard or saw 'anything' suspicious,

18.

(5) M.M. has been happy but she keeps
asking when is Plaintiff coming back,
(6) M.M. is seeing her psychiatist Dr.
Lichter for her Autism, ADHD, Pico, and
personality disorder.

(37) On or about September 23, 2021, Ramirez
spoke with the biological brother of M.M.
(i.e. Manny Saucedo), the same brother who
was responsible for putting the whole DCFS
investigation into motion, and now learns
the following; (1) He don't understand why
his sister (m.m.) still asks for Plaintiff (2),
His mother told him that his sister, told
mother that something happen but then
she (M.M.) change her mind or said it was
a prank, (3) He, brother is 'worry' about his
sister, because it is 'scary' to think that
she thinks its a prank or joke to say
those things (i.e. sex abuse allegations) so
'how' he got to be 'careful' around her,'
hopefully, her psychiatrist can help her.

(38) At no time, prior to entering an indicated
finding against Plaintiff and adding his name
to the State Central Registry (SCR) for 50 years,

19.

Defendants Det. Baptiste, DCFS investigator Francisco Ramirez, DCFS investigator Adriene Hudson, DCFS Supervisor Ashley Allen and DCFS Area Administrator Sylvester Fulcher, put forth ~~No~~ effort to provide Plaintiff a copy of the CANTS or interview him, in accordance to DCFS Procedures 308.160 (1)(A)(D)

(39) Plaintiff was <sup>clearly</sup> ~~clear~~ denied an opportunity to provide exculpatory evidence and/or witnesses, or information, others who were aware of M.M. history of falsely accusing others of inappropriate touches and sexual misconduct.

(40) Defendants failure to contact Plaintiff, failed to afford Plaintiff an opportunity to share his status as a child care worker and Mandate Reporter from his employment as a community educator and public speaker, where Plaintiff were a member of the Chicago Torture Justice Center Speaker's Bureau, which Plaintiff was allowed to speak with students in Chicago Public Schools ("CPS"), on the curriculum involving the history of *Chicago Police Torture Scandal involving the late Police Commander Jon Burge and officers, (*Jeremy Gorner, CPS to teach 8th, 10th graders about Jon Burge legacy as part of reparations, CHI.TRIB, August 28, 2017, https://www.chicagotribune.com/news/breaking/ct-cps-burge-curriculum-20170828-story)

20.

as well as, a fellow and student-aid with the University of Chicago; An Advisor Committee Member with the Educational Justice Project (EJP) at the University of Illinois, Fellowship with Northeastern Illinois University ('Prison and Neighborhood Art, and (Education) Project); Applied and Received a Soros Justice Fellowship, to open the Freedom School (i.e. to discuss community related issues to CPS-students and community member(s); and organizations). See Attach Doc #7-19

(41) Introduction: Plaintiff asserts and maintains that Defendants herein; Francisco Ramirez, Adriene Hudson, Sandra Baptiste, Ashley Allen and Sylvester Fulcher, violated the Due Process Clause of the Fourteenth Amendment when they failed to, (1) interview him, (2) Consider exculpatory evidence, (3) provide him notice of investigation or the evidentiary grounds on which the indicated decision was made, (4) hold a pre-deprivation administrative's conference, and (5) expedite his appeal.

(42) Defendant Allen and Fulcher decision to indicate Plaintiff without first providing him with a pre-deprivation administration teleconference;

21.

(43) Ramirez personally conducted the investi-
gation of Plaintiff without giving him a CANTS
Notice.

(44) Ramirez and Allen Failure to take the requisite
steps to identify Plaintiff as eligible for pre-and
post deprivation process.

(45) Plaintiff was deprived of his right to pursue
community educator and public speaking position by
the Defendants having issued an indication of
Child abuse without the pre-and post deprivation
process guaranteed to him as a child care
worker.

(46) Defendant Det. Baptiste, as the Youth Service
Coordinator and a committee member with the
Illinois Children's Justice Task Force ('ICJTF'), knew
or should have known that, by providing False
information to DCFS investigators, during an
open child abuse investigation, would prejudice
the Plaintiff and seriously undermine the
truth-seeking process.

(47) Defendant Det. Baptiste deliberate and intent-
ional false statements deprived Plaintiff his
due process right to be put on notice and to
be heard during an investigative process, which
led to Flawed investigation tinted indicated finding.

22.

(48) Defendants all knew or should have known that while the indicated finding remained on ~~the~~ the State Central Register (i.e. nearly a year) Plaintiff was effectively prevented from speaking engagements with Chicago Public Schools and Colleges, and universities.

(49) Defendants Fulcher and Allen rushed the indicated finding against Plaintiff just to meet their 90-day timeline to close the investigation

(50) Defendant Det. Baptiste orchestrated the flaw investigation that ~~to~~ led to the indicated finding against Plaintiff then used this same finding to file a criminal complaint and indictment for sexual assault of M.M. with no credible evidence. see Attach Doc #13A

(51) The Seventh Circuit stated "the term [credible evidence] now is employed in a regulatory context that contains clear instructions on proper investigative techniques and that explicitly requires that the investigating officer consider all evidence on 'both' sides of the issue."

(52) Defendant Det. Baptiste goes even further to "shock the conscience" when she and Defendants use the "flawed" indicated finding to force Plaintiff

23.

from his family home in Chicago, and
initiated a new investigation against
Plaintiff sister (Gloria Watkins) for allowing
Plaintiff living w/th minor's (i.e. niece's + nephews)
in the house, while the appeal to the administrative
hearing was pending. see Attach Doc#14-15

(53) Defendants arbitrarily use their power's to
deprive Plaintiff his fundamental rights to
life, liberty or property without Due Process
of Law.

(54) As of the date of this complaint, DCFS and
its investigators (including Det. Baptiste) and Supervisors
has not afforded Plaintiff any of his statutory
or Constitutional procedural due process
rights.

(55) As a direct and proximate results of the
acts of Defendants, the Plaintiff Kilroy Watkins,
suffered the following damages:

    A. Violation of his Constitutional rights
    under the Due Process Clause of the
    Fifth and Fourteenth Amendments to
    United States Constitution, which prohibits
    deprivation of life, liberty and property
    without due process of law.

24.

(56) The actions of Defendants violated the clearly established and well settled Federal Constitutional rights of Plaintiff.

   a. The right to redress of Grievance

   b. The right to due process under the laws

   c. The right to Fundamental Fairness

- CLAIMS FOR RELIEF -

COUNT I. 42 U.S.C. §1983 Against Individual Defendants

(57) Paragraph 1 through 56 are incorporated herein by reference as though fully set forth.

(58) Plaintiff Kilroy Watkins Complaint for damages set forth above under 42 U.S.C. §1983 against Defendants DCFS investigator Francisco Ramirez, DCFS investigator Adriene Hudson, Harvey Police/Detective (i.e. acting DCFS investigator) Sandra Baptiste, DCFS Supervisor Ashley Allen and DCFS Area Administrator Sylvester Fulcher, for violation of his constitutional rights in their individual and Official Capacity, and acting under the color of law.

COUNT II. Plaintiffs 42 U.S.C. §1983 Claim For violation of Procedural Due Process Rights

25.

(59) Plaintiff in Count II arejis Kilroy Watkins

(60) Plaintiff incorporate paragraph 1-59 as if fully set forth herein

(61) The Count II Defendants are Francisco Ramirez, Sandra Baptiste, Adriene Hudson, Ashley Allen and Sylvester Fulcher, sued in their respective individual capacities.

(62) The Count II Defendants, acting individually and in concert with one another, violated the Due Process Clause of the Fourteenth Amendment when they failed to (1) afford Plaintiff any of his constitutional and statutory rights of being notice of the investigation or to be interviewed, (2) present or consider any exculpatory evidence, (3) hold a pre-deprivation administrator's conference, (4) expedited his appeal within 35-days.

(63) Moreover, the Count II Defendants, by depriving Plaintiff rights to Familial association, Familial autonomy, Familial integrity, and family privacy, Further violated Plaintiff's procedural due process rights by failing to afford any procedure by which the investigation or indicated findings could be challenged.

(64) The actions and conduct of the Count II Defendants caused injury to Plaintiff.

26.

(65) As relief, Plaintiff seek a declaratory judgment that the Count II Defendants' actions violated his rights to procedural due process and he seek compensatory damages in an amount of at least $750,000 against the Count II Defendants, and any other relief, including, but not limited to, an award of costs as the Court deems appropriate.

(66) Given that the Count II Defendants acted intentionally, recklessly and/or with deliberacted indifference to the consequences of their actions as set forth above, Plaintiff and seek an award of punitive damage against the Count II Defendants.

Count III: Plaintiff's 42 U.S.C. § 1983 Claim For Violation of Procedural Due Process Rights Related to Deprivation of Liberty Interest in Career And Educational Opportunities

(67) Plaintiff in Count III is Kilroy Watkins

(68) Plaintiff incorporates paragraphs 30-67 as if fully set forth herein.

(69) The Count III Defendants are Francisco Ramirez, Adriene Hudson, Sandra Baptiste, Ashley Allen

27.

and Sylvester Fulcher, are sued in their respect-
ive individual capacities.

(70) The Count III Defendants acting individually
and in concert with one another, violated
Plaintiff procedural due process right to pursue
his career working with children and students
by indicating him for child sex abuse without
Considering all available exculpatory evidence,
and relying upon allegations that was not
properly investigated nor could be substan-
tiated by a license psychiatrist or psycholog-
ist.

(71) The actions and conduct of the Count III
Defendants caused injury to Plaintiff.

(72) By maintaining allegations for child sex abuse,
despite the flawed investigation and numerous
due process violations, the Defendants
unconstitutionally caused the injury described
herein, to Plaintiff.

(73) As relief, Plaintiff seeks a declaratory judg-
ment against all of the Count III Defendants,
that the actions of the Count III Defendants
violated his procedural due process rights
to pursue his interests in career opportunity.
Plaintiff further seeks compensatory damages

28.

in an amount of at least $750,000 against the Count III Defendants, and any other relief including, but not limited to, an award of costs the Court deems appropriate.

(74) Given that the Count III Defendants, acted intentionally, recklessly and with deliberate indifference to the consequences of their actions as set forth above, and operated without legal authority insofar as the allegation they made against Plaintiff was in direct violation of statutory and constitutional authority, as well as Defendants Federal court 'mandated' policy and procedures, Plaintiff seeks an award of punitive damages against the COUNT III Defendants.

## COUNT IV - OFFICIAL MISCONDUCT

(75) Paragraph 38 through 74 are incorporated and set forth herein and fully referenced.

(76) Defendant Det. Baptiste Knowingly, willingly and deliberately neglected her duty as a sworn law enforcement officer, when DCFS delegated part of its investigatory process, where Det. Baptiste primary responsibility was to contact Plaintiff, put

29.

him on notice (i.e. copy of CANTS) and interview
Plaintiff, regarding the allegations of child sex
abuse and neglect; DCFS Procedure 300.110, also see,
325 ILCS 5/4(B)

(77) In an intentional effort to compound the
dereliction of duties, Defendant Det. Baptiste
knowingly, willingly and intentionally fabricated
a false statement of or about Plaintiff was a
Register Sex Offender, who was register in
Chicago but lived in Harvey, and couldn't
be found or located, Det. Baptiste knew or
should have known her statement was materially
false, and would likely be highly perjudical and
deprive Plaintiff his right to due process.

(78) Defendant Det. Baptiste willingly, willfully and
intentionally failed to perform her law enforcement
duties required by law, when she knowingly failed
to locate, inform and interview Plaintiff, which
would of allowed him the opportunity to
present exculpatory evidence and share
his child care worker status and Mandated
Reporter status with at least two universities.

(79) Defendant Det. Baptiste willfully performed
an act which she knew were forbidden
by law to perform. see Attached Doc.#16-17

(80) Defendant Det. Baptiste acted with the intent to obtain a indicated finding, that would be later used to initiate criminal charge(s) stemming from a Flawed DCFS investigation, in which the same Det. Baptiste introduced false information and suppress potentially exculpatory evidence, all in a 'conscious-shocking' misconduct.

(81) Defendant herein, knowingly used communication directly and indirectly to force family separation between Plaintiff and family, using the same Flawed indicated findings to justify targeting Plaintiff nearly six months later, all in an deliberate effort to obstruct, impede and prevent Plaintiff from having due process under the law, thereby violating his constitutional rights.

(82) As a result of malfeasance, misfeasance and the nonfeasant behavior of the before said Defendant misconduct, plaintiff suffered damages.

— COUNT-V Indemnification —

(83) Paragraph 1-82 are incorporated herein by

31.

reference as though fully set forth.

(84) Defendant Det. Baptiste, the City of Harvey is a Municipality and must insure, and protect Plaintiff against loss, damages and/or injuries by any of its employees.

(85) Defendants Francisco Ramirez, Adriene Hudson, Sandra Baptiste, Ashley Allen and Sylvester Fulcher are corporation of the State of Illinois have to compensate Plaintiff for damages incurred by its employees, policy and practices that injured Plaintiff and violated his constitutional rights and liberty.

COUNT VI - 42 U.S.C. § 1983 Against the City of Harvey

(86) Prior to April 24, 2022, the City of Harvey developed and maintained policies and customs exhibiting deliberate indifference to the constitutional right of person(s) in the City, which caused the violation of Plaintiffs' right.

(87) It was the policy and custom of the City of Harvey to inadequate and improperly investigate citizens complaints of police misconduct,

and acts of misconduct were instead
tolerated by the City of Harvey, including
but not limited to, the following incidents:
a. Illegally searching and seizing it's citizens
without probable cause or warrants.
b. Making pretextual stops
c. Fabricating evidence in criminal case
e. physical assaults of citizens

(88) It was the policy and custom of the
City of Harvey to inadequately supervise
and train its police officers, including Defend-
ant herein (Det. Sandra Baptiste), thereby failing
to adequately discourage further constitution-
al violations on the part of it's police
officers. The City of Harvey did not require
appropriate in-service training or retraining
of officer's who were known to have
engaged in police misconduct.

(89) As a result of the before mentioned
described policies and customs, police
officer's, including Defendant Det. S.
Baptiste, believe that her actions would
not be properly monitored by supervisor's
and that misconduct would not be investig-
ated or sanctioned, but would be tolerated.

33.

(90) The before mentioned described policies and customs demonstrate a deliberate indifference on the part of the policy makers of the City of Harvey to the constitutional rights of persons in the City, and were the cause of the violation of Plaintiffs' rights alleged herein.

See Relief Request, next page

34.

**V.    Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

WHEREFORE, Plaintiff Kilroy Watkins, respectfully
requests that this Court enter judgment
in his favor on all counts and award the following
relief against Defendants: (4) Declaratory judgment
that Defendants violated Plaintiff's Constitutional rights
and statutory rights;            Con't Next page p. 36

VI.    The plaintiff demands that the case be tried by a jury.  ☒ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __30__ day of __March__, 20 __23__

_Kilroy Watkins_
(Signature of plaintiff or plaintiffs)

_Kilroy Watkins_
(Print name)

#2022042703 3
(I.D. Number) Cook County Jail
2700 So. California Ave.
Chicago, IL 62608
(Address)

Revised 9/2007

Relief cont

(b) Compensatory damages, exclusive of Cost and interest, to which Plaintiff are found to be entitled;

(c) Lost income resulting from Defendants actions causing lost/impaired employment (including prospects for Plaintiff;

(d) Punitive damages against Defendants, exclusive of costs and interest, to which Plaintiffs are found to be entitled;

(e) Issue an injunction ordering Defendant DCFS to:

   1. Immediately authorize the removal, and expungement of the "indicated finding," that was founded against Plaintiff, from the State Central Registry

Date: 3/30/2023

Respectfully submitted,
/s/ Kilroy Watkins
Kilroy Watkins
#20220427033
Cook County Jail
2700 So. California Ave
Chicago, IL 60608

36.

 Gmail

**Kilroy Watkins <kilroywatkins1970@gmail.com>**

## Fw: ADOS test on Tuesday 08/04/2020 at 10AM

**marisa saucedo** <saucedomarisa@yahoo.com>                    Thu, Oct 15, 2020 at 2:16 PM
Reply-To: marisa saucedo <saucedomarisa@yahoo.com>
Cc: Kilroy Watkins <kilroywatkins1970@gmail.com>

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Hartwell, Prudence [UCH]" <Prudence.Hartwell@uchospitals.edu>
**To:** "marisa saucedo" <saucedomarisa@yahoo.com>
**Sent:** Thu, Oct 15, 2020 at 11:39 AM
**Subject:** RE: ADOS test on Tuesday 08/04/2020 at 10AM

Hello Ms. Saucedo,

The Child Psychiatry team should be reaching out to you about the availability.  Please let me know if they reach out.

The visit will be virtual.

It was great to see you and Michaela and her father.

Prudence Hartwell, MD

---

**From:** marisa saucedo [saucedomarisa@yahoo.com]
**Sent:** Wednesday, October 14, 2020 5:35 PM
**To:** Hartwell, Prudence [UCH]
**Subject:** Re: ADOS test on Tuesday 08/04/2020 at 10AM

Good afternoon, I'm trying to see if the 10am slot still available. If not this way we can be there at 8 ty

Sent from Yahoo Mail on Android

On Sun, Aug 2, 2020 at 6:09 PM, marisa saucedo
<saucedomarisa@yahoo.com> wrote:

Received

Sent from Yahoo Mail on Android

On Sun, Aug 2, 2020 at 4:56 PM, Hartwell, Prudence [UCH]
<Prudence.Hartwell@uchospitals.edu> wrote:

 Gmail

**Kilroy Watkins <kilroywatkins1970@gmail.com>**

## FW: ADOS information for evaluation on Oct. 13, 2020 at 9AM

**marisa saucedo** <saucedomarisa@yahoo.com>
Reply-To: marisa saucedo <saucedomarisa@yahoo.com>
To: Kilroy Watkins <kilroywatkins1970@gmail.com>

Mon, Oct 5, 2020 at 12:33 PM

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Hartwell, Prudence [UCH]" <Prudence.Hartwell@uchospitals.edu>
**To:** "'saucedomarisa@yahoo.com'" <saucedomarisa@yahoo.com>
**Sent:** Mon, Oct 5, 2020 at 11:28 AM
**Subject:** FW: ADOS information for evaluation on Oct. 13, 2020 at 9AM

**From:** Hartwell, Prudence [UCH]
**Sent:** Tuesday, September 01, 2020 1:24 PM
**To:** saucedomarisa@yahoo.com
**Cc:** Prendergast, Barbara [PED]
**Subject:** ADOS information for evaluation on Oct. 13, 2020 at 9AM

Hello Ms. Saucedo,

Below is the information about the ADOS evaluation for Michaela, which will be done on Oct. 13, 2020 at 9AM. The information below is 1.) details about the test site including parking, location, etc., 2.) important health information to keep Michaela and the rest of the team safe during this time of COVID, 3.) FAQ's about the ADOS evaluation.

Michaela will need a follow up with Dr. Lichtor in Child Psychiatry for the results of the ADOS evaluation to be reviewed with you. To make an appointment with Dr. Lichtor, please call the Child Psychiatry appointment line at: 773-702-3858.

On the day of the appointment, Michaela will need to wear a mask entering the building (the testing site is not at Comer as you will see below) during the 1 hour test. Please review

If you have any questions, please feel free to email me here or call my office phone at 773-702-0459, ext. 4

Sincerely,

Prudence Hartwell

 **Gmail**

Kilroy Watkins <kilroywatkins1970@gmail.com>

---

## FW: ADOS information for evaluation on Oct. 13, 2020 at 9AM

**marisa saucedo** <saucedomarisa@yahoo.com>                                        Mon, Oct 19, 2020 at 11:39 AM
Reply-To: marisa saucedo <saucedomarisa@yahoo.com>
To: "Hartwell, Prudence [UCH]" <prudence.hartwell@uchospitals.edu>
Cc: Kilroy Watkins <kilroywatkins1970@gmail.com>

Good morning, I hope you are having a good day.
I was inquiring about  Michaela's diagnosis and to see if you can send to us via email please.
I would also like to say thank you for the attention that has been given to our daughter especially during this difficult time
with covid-19 it's difficult for everyone especially children.
We definitely want to continue to work together with you guys to help Michaela with her needs that she will face in her
life.
The diagnosis was hard to hear but now we can help her with it, and as always we have been her support system and
any information about educating parents about Broad-spectrum Autism.
Also any information about support groups that are available and reading material would be very appreciated.
Thanks again.

Sent from Yahoo Mail on Android

[Quoted text hidden]

 **Gmail**

**Kilroy Watkins <kilroywatkins1970@gmail.com>**

## Fw: ADHD ASD therapist, Dr. Eric Stobie RE: Michaela's Medication

**marisa saucedo** <saucedomarisa@yahoo.com>
Reply-To: marisa saucedo <saucedomarisa@yahoo.com>
To: Kilroy Watkins <kilroywatkins1970@gmail.com>

Wed, Oct 21, 2020 at 12:04 PM

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Hartwell, Prudence [UCH]" <Prudence.Hartwell@uchospitals.edu>
**To:** "marisa saucedo" <saucedomarisa@yahoo.com>
**Sent:** Wed, Oct 21, 2020 at 10:55 AM
**Subject:** ADHD ASD therapist, Dr. Eric Stobie RE: Michaela's Medication

Hello Ms. Saucedo,

This is the therapist that I was speaking about to Michaela's dad:

https://www.psychologytoday.com/us/therapists/eric-stobie-munster-in/462878?sid=5f9059085593e&name=eric+
stobie&ref=1&tr=ResultsRow

The therapist's name is Dr. Eric Stobie. He is out of NW Indiana, but takes all insurances and I believe sees Illinois patients as well. Dr. Stobie also has virtual therapy sessions which may be helpful for Michaela. Dr. Stobie himself has ADHD and ASD as well.

# Location

Clarity Clinic NWI
9250 Columbia Ave
Suite E2
Munster, IN 46321
(219) 501-4565

Finances

- **Cost per Session:** $110 - $130

Pay By: American Express, Cash, Check, Discover, Health Savings Account, Mastercard, Visa

**Accepted Insurance Plans**

- Aetna
- Anthem
- Blue Cross
- Blue Shield
- BlueCross and BlueShield
- Cigna

Sincerely,

Prudence Hartwell, MD

---

**From:** marisa saucedo [saucedomarisa@yahoo.com]
**Sent:** Tuesday, October 20, 2020 9:32 PM
**To:** Hartwell, Prudence [UCH]
**Subject:** Michaela's Medication

Good evening, we have been giving Michaela her ADHD medication. Trying to see if they is a lower dose aside from the 36ml because it's lasting longer than 8 hours.
Thank you.

Sent from Yahoo Mail on Android

 Gmail

**Kilroy Watkins <kilroywatkins1970@gmail.com>**

## Permission to return to school

**Kevin Micks** <kmicks@harvey152.org>
To: marisa saucedo <saucedomarisa@yahoo.com>
Cc: Kilroy Watkins <kilroywatkins1970@gmail.com>

Mon, May 3, 2021 at 12:51 PM

Good morning,
She is added.

On Sun, May 2, 2021 at 11:14 AM marisa saucedo <saucedomarisa@yahoo.com> wrote:
Mom's number 708-654-2758
Dad's number 312-447-4702

Sent from Yahoo Mail on Android

On Sun, May 2, 2021 at 11:13 AM, marisa saucedo
<saucedomarisa@yahoo.com> wrote:

Parents Marisa Saucedo, Kilroy Watkins
Student Michaela Mcray
Advisory Mrs.Hackett

Sent from Yahoo Mail on Android

--
Kevin Micks
District 152 Instructional Technology

 **Gmail**

Kilroy Watkins <kilroywatkins1970@gmail.com>

---

## You have been removed as a guardian
2 messages

---

**Google Classroom** <no-reply+e0310eec@classroom.google.com>          Fri, Dec 3, 2021 at 3:50 PM
To: kilroywatkins1970@gmail.com

 **Google** Classroom

Hello,
Danielle Acheampong removed you as a guardian from a student.

 STUDENT
**Michaela McRay**

You will no longer get email summaries of Michaela's Classroom activity.

**Google**    Google LLC 1600 Amphitheatre Parkway, Mountain View, CA 94043 USA

---

**Kilroy Watkins** <kilroywatkins1970@gmail.com>          Fri, Dec 3, 2021 at 3:59 PM
To: marisa saucedo <saucedomarisa@yahoo.com>

---------- Forwarded message ---------
From: **Google Classroom** <no-reply+e0310eec@classroom.google.com>
Date: Fri, Dec 3, 2021, 2:50 PM
Subject: You have been removed as a guardian
To: <kilroywatkins1970@gmail.com>

 **Google** Classroom

Hello,
Danielle Acheampong removed you as a guardian from a student.



DOC*
DOC 5

# ILLINOIS MURDERER AND VIOLENT OFFENDER AGAINST YOUTH REGISTRATION ACT REGISTRATION FORM

enile Delinquent
urer with child victim
rer with adult victim
Violent Offender

(Please type or print using black ink)

Photo Required

**ion Type** : CHANGE OF ADDRESS

**CR No** : 19761600

**st** : WATKINS    **First Name:** RILROY

**Middle Name:**

**M-SEP-1070**   **Sex:** MALE    **Race:** BLACK

**POB:** ILLINOIS

**al Address:** 9956 S PERRY AVE

**Apartment #:**

**HICAGO**    **State:** ILLINOIS    **ZIP** 60628

**County:** COOK

**Area:** 2    **Beat:** 511    **Telephone:** 708-870-7011

**Marks/Tattoos:** TATTOO RIGHT HAND "T"

**Eyes:** BROWN

**300**    **Wgt:** 170    **Hair:** BLACK

**SSN:** XXX-XX-XX17    **DNA:** ☑Yes ☐No

**243280KA3**    **SID:** 27451560

**LEADS#** E17B0835

**802388**    **Chgo IR #:** 627049

**Misc #:**

**W32550070252**    **State:** IL

**Expiration Date:** 04-SEP-2023

**Make:**    **Model:**

**Year:**

**Plate #**    **VIN #:**

**Color:**

**Conviction:** 10-MAR-1993

**Age of Victim(s)** 21

**State of Conviction:** COOK/IL

**Court Case #** 92CR0283401

**MURDER/INTENT KILL/INJURE**

**Statute:** MURDER

**Sentence:** 30 YEARS

## EMPLOYMENT INFORMATION

**'s Name:**

**Employed Since**

**'s Address**

**Employer's Phone Number**

   **State:**    **ZIP:**

## SCHOOL / INSTITUTION OF HIGHER EDUCATION INFORMATION

**titution of Higher Education Name:**

**Date Enrolled:**

**dress:**

   **State:**    **ZIP:**

**nformation:**

The State's Attorney of the county of conviction has provided a Verification of Case Facts Document certifying this offense was not sexually motivated.

**Official's Signature** _____    **Date** 09-JUL-2021

**Registrant** _____    **Date** 09-JUL-2021

is not valid until Page 2 is completed. Offender must sign both page 1 and 2.



 Gmail

Kilroy Watkins <kilroywatkins1970@gmail.com>

## Criminal Registration
4 messages

**Kilroy Watkins** <kilroywatkins1970@gmail.com>
To: lbarbee@cityofharveyil.gov

Fri, Jul 2, 2021 at 4:54 PM

Sgt. Barbee,

This email is a follow up to our initial conversation yesterday, in regards to my intent to change address in accordance with the guidelines set forth under the Illinois Murderer and Violent Offender Against Youth Registration Act. During our phone conversation on July 1,2021, you advised me to come in today to speak with you to sign an affidavit so I can have movement to be able to change addresses. As you requested, *I showed up for our appointment at the Harvey Police department at 9;15a.m. and the officer at the front desk said that 'I should come back at 1;00p.m. because you were out of office, however, when I returned at 12;45pm I was told by a Ms. Portillo, who was working the front desk, said that you were out and would not be returning for the day and that I should call Tuesday morning. I asked if she would be willing to sign the back of the Harvey Police Department identification card I was given, in which Ms. Portillo complied, as well as provided your email address upon request.*

*Sgt. Barbee, I want to remain in compliance with the Illinois Registration Act for Violent Offenders but I'm not sure what you would like for me to do at this time, therefore, I humbly await your reply and insight on this matter.*

*Best,*

*Kilroy Watkins*

**Kilroy Watkins** <kilroywatkins1970@gmail.com>
To: Steven Becker <swbeckerlaw@gmail.com>

Fri, Jul 2, 2021 at 11:07 PM

---------- Forwarded message ---------
From: **Kilroy Watkins** <kilroywatkins1970@gmail.com>
Date: Fri, Jul 2, 2021, 3:54 PM
Subject: Criminal Registration
To: <lbarbee@cityofharveyil.gov>

Sgt. Barbee,

This email is a follow up to our initial conversation yesterday, in regards to my intent to change address in accordance with the guidelines set forth under the Illinois Murderer and Violent Offender Against Youth Registration Act. During our phone conversation on July 1,2021, you advised me to come in today to speak with you to sign an affidavit so I can have movement to be able to change addresses. As you requested, *I showed up for our appointment at the Harvey Police department at 9;15a.m. and the officer at the front desk said that 'I should come back at 1;00p.m. because you were out of office, however, when I returned at 12;45pm I was told by a Ms. Portillo, who was working the front desk, said that you were out and would not be returning for the day and that I should call Tuesday morning. I asked if she would be willing to sign the back of the Harvey Police Department identification card I was given, in which Ms. Portillo complied, as well as provided your email address upon request.*

*Sgt. Barbee, I want to remain in compliance with the Illinois Registration Act for Violent Offenders but I'm not sure what you would like for me to do at this time, therefore, I humbly await your reply and insight on this matter.*

*Best,*

*Kilroy Watkins*

**Leonard Barbee Jr.** <lbarbee@cityofharveyil.gov>

Mon, Jul 5, 2021 at 9:03 AM

To: Kilroy Watkins <kilroywatkins1970@gmail.com>

Good morning Kilroy.

I appreciate your email of your concerns. Unfortunately, things happen that are completely out of my control. Tuesday & Wednesday I am available at 0800AM to you. Please let me know as soon as possible. For your yearly registration, please bring a money order for $30.00 for violent offender registry. Thank you in advance.

Detective Barbee, L.#919
Harvey Police Department
15301 Dixie Highway
Harvey, IL. 60424
(708) 331-3030 ext. 214
lbarbee@cityofharveyil.gov

**From:** Kilroy Watkins <kilroywatkins1970@gmail.com>
**Sent:** Friday, July 2, 2021 3:54 PM
**To:** Leonard Barbee Jr. <lbarbee@cityofharveyil.gov>
**Subject:** Criminal Registration

Sgt. Barbee,

This email is a follow up to our initial conversation yesterday, in regards to my intent to change address in accordance with the guidelines set forth under the Illinois Murderer and Violent Offender Against Youth Registration Act. During our phone conversation on July 1,2021, you advised me to come in today to speak with you to sign an affidavit so I can have movement to be able to change addresses. As you requested, *I showed up for our appointment at the Harvey Police department at 9;15a.m. and the officer at the front desk said that 'I should come back at 1;00p.m. because you were out of office, however, when I returned at 12;45pm I was told by a Ms. Portillo, who was working the front desk, said that you were out and would not be returning for the day and that I should call Tuesday morning. I asked if she would be willing to sign the back of the Harvey Police Department identification card I was given, in which Ms. Portillo complied, as well as provided your email address upon request.*

*Sgt. Barbee. I want to remain in compliance with the Illinois Registration Act for Violent Offenders but I'm not sure what you would like for me to do at this time, therefore, I humbly await your reply and insight on this matter.*

*Best,*

*Kilroy Watkins*

**Kilroy Watkins** <kilroywatkins1970@gmail.com>                                        Mon, Jul 5, 2021 at 10:17 AM
To: Steven Becker <swbeckerlaw@gmail.com>

---------- Forwarded message ---------
From: **Leonard Barbee Jr.** <lbarbee@cityofharveyil.gov>
Date: Mon, Jul 5, 2021, 8:03 AM
Subject: Re: Criminal Registration
To: Kilroy Watkins <kilroywatkins1970@gmail.com>

Good morning Kilroy.

I appreciate your email of your concerns. Unfortunately, things happen that are completely out of my control. Tuesday & Wednesday I am available at 0800AM to you. Please let me know as soon as possible. For your yearly registration, please bring a money order for $30.00 for violent offender registry. Thank you in advance.


Detective Barbee, L.#919
Harvey Police Department
15301 Dixie Highway
Harvey, IL. 60424
(708) 331-3030 ext. 214
lbarbee@cityofharveyil.gov

---

**From:** Kilroy Watkins <kilroywatkins1970@gmail.com>
**Sent:** Friday, July 2, 2021 3:54 PM
**To:** Leonard Barbee Jr. <lbarbee@cityofharveyil.gov>
**Subject:** Criminal Registration

Sgt. Barbee,

This email is a follow up to our initial conversation yesterday, in regards to my intent to change address in accordance with the guidelines set forth under the Illinois Murderer and Violent Offender Against Youth Registration Act. During our phone conversation on July 1,2021, you advised me to come in today to speak with you to sign an affidavit so I can have movement to be able to change addresses. As you requested, *I showed up for our appointment at the Harvey Police department at 9:15a.m. and the officer at the front desk said that 'I should come back at 1;00p.m. because you were out of office, however, when I returned at 12;45pm I was told by a Ms. Portillo, who was working the front desk, said that you were out and would not be returning for the day and that I should call Tuesday morning. I asked if she would be willing to sign the back of the Harvey Police Department identification card I was given, in which Ms. Portillo complied, as well as provided your email address upon request.*

*Sgt. Barbee, I want to remain in compliance with the Illinois Registration Act for Violent Offenders but I'm not sure what you would like for me to do at this time, therefore, I humbly await your reply and insight on this matter.*

*Best,*

*Kilroy Watkins*

 Gmail

Kilroy Watkins <kilroywatkins1970@gmail.com>

## outdoor quilting workshop at Precious Blood

4 messages

**Alice Kim** <alicekim@uchicago.edu>                                                                                                   Fri, Jul 2, 2021 at 5:15 PM
To: Madeline Wright <madelinewright13@chicago.edu>, Noelle Petrowski <petrowskinoelle@gmail.com>, Renaldo Hudson <renaldo@illinoisprisonproject.org>, Kilroy Watkins <kilroywatkins1970@gmail.com>, "pablommendoza3@gmail.com" <pablommendoza3@gmail.com>, Colette Payne <colette@womensjustice.net>, Tommy Hagan <hagant@uchicago.edu>, "eric.blackmon@law.northwestern.edu" <eric.blackmon@law.northwestern.edu>

☐ **invite.ics**
4K

---

**Kilroy Watkins** <kilroywatkins1970@gmail.com>                                                                        Fri, Jul 2, 2021 at 5:33 PM
To: Alice Kim <alicekim@uchicago.edu>

Hi AK,

Sorry, I missed the meeting today.  I was at the Harvey Police Department all day today trying to catch the Criminal Registration Officer, who advised me to come in today so we can timely submit my change of address request, which must be done within 3 to 5 days, however, he (Sgt. Barbee) failed to show up when I arrived at 9;25a.m. or when I was told to return at 1;00p.m.. So, now I must bring this to the attention of my attorney, Steve W. Becker, because the State can have me in the same mess they had Mark Clements just recently in.  The only thing I was able to accomplish today was the front desk employees ( Ms. Portillo) signature on the back of a card, stating 'she told me to call Tuesday morning' presumably to try to catch Sgt. Barbee.

Best,
Kilroy Watkins

On Fri, Jul 2, 2021 at 4:15 PM Alice Kim <alicekim@uchicago.edu> wrote:

---

**Kilroy Watkins** <kilroywatkins1970@gmail.com>                                                                    Tue, Jul 6, 2021 at 3:48 PM
To: Alice Kim <alicekim@uchicago.edu>

Hi AK,

I just heard from Renaldo and he told me that I was not selected for the IPP ambassador program, in his opinion I was over qualified for the position. Sounds like bullshit to me but it's all good!!

Best,

Kilroy

On Fri, Jul 2, 2021, 4:15 PM Alice Kim <alicekim@uchicago.edu> wrote:

---

**Alice Kim** <alicekim@uchicago.edu>                                                                                             Wed, Jul 7, 2021 at 9:26 AM
To: Kilroy Watkins <kilroywatkins1970@gmail.com>

oooh no! how you feeling? sorry that didn't work out.
we gotta prep for Soros. let's look at our calendars tomorrow at lunch.
a

--

Alice Kim
Director of Human Rights Practice
Human Rights Lab, Pozen Family Center for Human Rights
University of Chicago
5720 S. Woodlawn Ave, Room 204 | 773 834 4207
https://humanrights.uchicago.edu/lab
Pronouns: she/her

**From:** Kilroy Watkins <kilroywatkins1970@gmail.com>
**Sent:** Tuesday, July 6, 2021 2:48 PM
**To:** Alice Kim <alicekim@uchicago.edu>
**Subject:** Re: outdoor quilting workshop at Precious Blood

[Quoted text hidden]

CHICAGO TORTURE
JUSTICE CENTER

December 9, 2019

To: IDOC Parole Agent
1120 S Oakley Ave.
Chicago, IL 60612

Re: Kilroy Watkins, B02385

To Whom It May Concern,

Since being released from prison, Kilroy Watkins has been an active participant and leader at the

Chicago Torture Justice Center. He is a part of the Center's Speakers Bureau and frequently goes into

Chicago Public Schools and area universities. For each speaking engagement, Kilroy is paid between

$150 to $200, plus reimbursement for his mileage.

Kilroy is also key member of our Survivor and Family Advisory Council. Through the Council he

offers valuable leadership to the Center's programs and is compensated by a limited annual stipend of

$550.

Kilroy's involvement with the Center demonstrates his leadership, integrity, and responsibility.

We feel privileged to have him as part of our community, and are very much looking forward to seeing

where his talents and hard work take him.

Please don't hesitate to reach out with any questions.

Sincerely,

Cindy Eigler

Chicago Torture Justice Center Co-Executive Director

cindy@chicagotorturejustice.org



# SAINT LEᵒNARD'S MINISTRIES

St. Leonard's Ministries
2120 W. Warren Blvd.
Chicago, IL 60612

Date: June 30, 2020

Re: Kilroy Watkins

Mr. Kilroy Watkins currently lives at St. Andrews Court, 50 N Hoyne, Chicago IL and has been a model tenant. He respects the rules and the staff as well as keeping his living area clean. Though he is living in a subsidized apartment without a rent expectation, he has been employed at Bloomers Chocolate since November 2019.

Mr. Watkins has worked tirelessly transitioning back into the community after 30 years of incarceration. He has taken advantage of the opportunities and programs offered to him at St. Leonard's Ministries. He completed one-on-one behavior therapy, group therapy covering anger management, healthy relationships, parenting classes and more, all offered by Adler University School of Psychology. He was assessed by Health Alternative Systems for substance use with the outcome of not needing treatment. He also completed classes in financial literacy, computer literacy, and employment training.

Founder Joan Shapiro of Reading Between the Lines, recognized Kilroy's intelligence and speaking ability and hired him to teach a 12-week class that guides formerly incarcerated people on how to apply critical thinking into their lives.

Chicago State University and DePaul University, invited Mr. Watkins to speak to college students about his experiences, and was hired by the Chicago Torture Center Speakers Bureau to educate Chicago Public School students. He was recruited to speak at the John Howard Association Young Professionals fund raising event and Governor Pritzker's bill signing that took place at St. Leonard's Ministries.

While incarcerated Mr. Watkins obtained an associate degree, paralegal certificate, and completed 140 college credits. Kilroy Watkins embraced his return to society with determination, commitment and open to learning.

I will gladly provide documentation necessary to assist Kilroy Watkins build a positive life. Feel free to contact me with any questions.

Best Regards,

Joni Stahlman,
Chief Program Director,
2120 W. Warren Blvd.
Chicago IL 60612
Direct line: 312.894.7989
Joni.stahlman@slministries.org



DOC #9

www.neiu.edu

Nontraditional Degree Programs
5500 North St. Louis Avenue
Chicago, IL 60625-4699
Phone: (773) 442-6030

August 25, 2021

Dear Kilroy Watkins:

We are writing to invite you to be a part of the second cohort of Learning Fellows sponsored by NEIU and the Prison + Neighborhood Arts/Education Project (PNAP). Congratulations!

As a fellow, you will receive a one-time stipend of $3,000 and take part in shaping virtual (but also hopefully in person) events on NEIU's campus, around the city of Chicago, and at Stateville Prison over the next two years. These events will highlight the importance of education as a human right for all and provide multiple constituencies the opportunity for dialogue around education in prison, prison abolition, alternatives to prison, and related topics.

If you would like to take part as a Learning Fellow in this initiative, funded by the Andrew W. Mellon Foundation, please sign below. The second cohort of Learning Fellows would benefit greatly from your experience and insight, and we would be honored to have you join us.

This fellowship program will:
- Provide financial support for you to support your education ($3,000)
- Provide structured academic support (as needed)
- Amplify and elevate the leadership of currently and formerly incarcerated people, particularly as scholars/organizers.

As a PNAP Learning Fellow you agree to:
- Attend a meeting of this group every two months
- Support cohort members to be academically successful
- Participate in one PNAP related event a year
- Feedback as needed on PNAP related events
- Be willing to be visible on a website as Learning Fellow for this project and to represent PNAP.


Sincerely,

Erica Meiners and Timothy Barnett on behalf of PNAP



**Illinois Department of**

# DCFS

**Children & Family Services**

## ACKNOWLEDGEMENT OF MANDATED REPORTER STATUS

I, ___Kilroy Watkins_____ NEIU ID # 681358 _____, understand that when I am employed as a
        (Employee Name)

___NORTHEASTERN ILLINOIS UNIVERSITY/ HIGHER EDUCATION___, I will become a mandated reporter under the
        (Type of Employment)
Abused and Neglected Child Reporting Act [325 ILCS 5/4]. This means that I am required to report or cause a
report to be made to the child abuse Hotline number at 1-800-25-ABUSE (1-800-252-2873) whenever I have
reasonable cause to believe that a child known to me in my professional or official capacity may be abused or
neglected. I understand that there is no charge when calling the Hotline number and that the Hotline operates
24-hours per day, 7 days per week, 365 days per year.

I further understand that the privileged quality of communication between me and my patient or client is not
grounds for failure to report suspected child abuse or neglect, I know that if I willfully fail to report suspected
child abuse or neglect, I may be found guilty of a Class A misdemeanor. This does not apply to physicians who
will be referred to the Illinois State Medical Disciplinary Board for action.

I also understand that if I am subject to licensing under but not limited to the following acts: the Illinois
Nursing Act of 1987, the Medical Practice Act of 1987, the Illinois Dental Practice Act, the School Code, the
Acupuncture Practice Act, the Illinois Optometric Practice Act of 1987, the Illinois Physical Therapy Act, the
Physician Assistants Practice Act of 1987, the Podiatric Medical Practice Act of 1987, the Clinical Psychologist
Licensing Act, the Clinical Social Work and Social Work Practice Act, the Illinois Athletic Trainers Practice
Act, the Dietetic and Nutrition Services Practice Act, the Marriage and Family Therapy Act, the Naprapathic
Practice Act, the Respiratory Care Practice Act, the Professional Counselor and Clinical Professional Counselor
Licensing Act, the Illinois Speech-Language Pathology and Audiology Practice Act, I may be subject to license
suspension or revocation if I willfully fail to report suspected child abuse or neglect.

I affirm that I have read this statement and have knowledge and understanding of the reporting requirements,
which apply to me under the Abused and Neglected Child Reporting Act.

*Kilroy Watkins*

_____
Signature of Applicant/Employee

6/22/2021
_____
Date

CANTS 22
Rev. 8/2013

**Office of the Director**
**406 E. Monroe Street • Springfield, Illinois 62701**
**www.DCFS.illinois.gov**

 Gmail

Kilroy Watkins

## HR Course Completion - ANCRA

**protectminors@uillinois.edu** <protectminors@uillinois.edu>
To: kilroywatkins1970@gmail.com

Mon, Aug 31, 2020 at 5:40 PM

You have successfully completed the UI New Hire ANCRA course.

 Gmail

**Kilroy Watkins <kilroywatkins1970@gmail.com>**

## Ethics Course Completion

**ethicsofficer@uillinois.edu** <ethicsofficer@uillinois.edu>
To: kilroywatkins1970@gmail.com

Mon, Aug 31, 2020 at 5:54 PM

Our records indicate that Kilroy Watkins (UIN: 679195131) completed the 2020 Ethics New Hire Orientation on 08/31/2020 at 04:54:25 PM.

## Donations

Please help us distribute A New Path to every person who requests a copy. Most people leaving prison have very limited funds. If you are in a position to make a donation, please send a check to the address above, or donate online at educationjustice.net/donate/. We receive no funds from the Illinois Department of Corrections or the State of Illinois. Each copy of A New Path costs around $5 to print and send. Thank you!

## Acknowledgements

The 2021 edition of A New Path was revised and authored by the following individuals:

- Lee Ragsdale, Reentry Guide Initiative Director
- Linda Larsen, RGI Writing and Research Coordinator
- Natalia Fic, RGI Distribution Coordinator
- Spanky Davis, RGI Outreach Coordinator

**Advisory Committee:** Roberto Lazcano, Kilroy Watkins, Josephine Horace, Michael Cannon, Pablo Mendoza, David Todd, and Antonio Spraggs

**EJP Members:** Lili Burciaga, Maggie Shelledy, Elise Duwe, Tyeese Braslavsky, Sarah Chitwood, Jazmine Thompson, Karolina Kalata, Daniela Barbosa, Kendra Mills, Ellen Ritter, Suzanne Phillips, Xochitl Gurrero, David Sharp, Endy Almonord, MoDena Stinnette, and Amber Scarborough

**EJP Interns:** Melissa Lechuga, Ashley Ireland, Maddy Madonnis, Jess Streepy, and Irene Kim

Special thanks to:

- Beth Pearl, Editor
- Rebecca Ginsburg, EJP Director
- Jamie Hines, EJP Operations Manager
- Jack Johnson, Designer

We would also like to thank EJP alumni and other systems-impacted and returned individuals who have contributed to the guide: Alex A., Alex V., Roberto L., Israel G., Ramon C., Erick N., Oscar S., Brian N., Darrell W., Edmund B., Johnny P., Marlon C., Heather B., Katerina B., Julia B., Missy L., Tony C., Roberto L., and Shaun W.,  Brian N., Chris H., Earl W., Greg A., Jobie T., Keke, Mike T., Tony C., Roberto B., Dennis M., Joseph B., Austin C., Tyrone M., and Orlando M.

Thanks to those who contributed images: Garifus Garcia, Luca Bravo, Alex Vergara, and members of the Deportee Wives Club.

Copyright by the Board of Trustees, University of Illinois, 2021.

# About A New Path

A New Path was produced by members of the Education Justice Project (EJP). EJP is a unit of the College of Education at the University of Illinois. Since 2008, EJP has offered academic programs to individuals incarcerated at Danville Correctional Center in Central Illinois.

A New Path is a natural outgrowth of the work we do at the prison, and of our concern for the well-being of our students and others like them who must try to make it on the outside after release and deportation. The guide is produced by EJP's Reentry Guide Initiative, which consists of a group of committed EJP members.

> **Disclaimer:** We have listed a number of different programs, services, and businesses throughout this guide as resources for people returning to their home country after incarceration in the US. We don't endorse any of these organizations or guarantee that these resources will be helpful (although we certainly hope they are). Since the situation is changing all the time, it's impossible to ensure that every piece of information in this guide is current, but we've done our best to include up-to-date, key information from trusted sources.

## Request Our Guides

Returning to live in Illinois after release? Please request a copy of Mapping Your Future: A Guide to Successful Reentry, also produced by the Education Justice Project.

Both Mapping Your Future and A New Path are free for those who need them. They are available in English and Spanish and can be ordered the following ways:

1. Request them online through www.educationjustice.net. You can download a pdf of our guides for free.

2. Request one through the reentry resource room at your facility.

3. Request by phone at 217-300-5150, or by email at reentry@illinois.edu

4. Send a request by mail:

   EJP
   1001 S. Wright St.
   Champaign, IL 61820

 **Gmail**

 Modena Stinnette

## Kilroy

**Fizdale, Katie** <fizdale@illinois.edu>                                          Mon, Oct 24, 2022 at 10:28 AM
To: "Ginsburg, Rebecca" <rginsbur@illinois.edu>
Cc: Modena Stinnette <​>, "Larsen, Linda" <lflarsen@illinois.edu>

Dear MoDena,

Thanks so much for being in touch with Kilroy and for sharing the news.

This may not be of any help, but I did the mandated reporting training with Kilroy. I just did it with another formerly incarcerated person over the weekend and I noticed that you can choose to print the certificate. My memory isn't perfect, but Kilroy may have saved the certificated on his computer, or taken a picture of the certificate with his phone. If you know someone who has access to his computer or his phone - it probably would have been from sometime in January or February of this year.

I'm so sorry that this is happening to Kilroy. It's sickening.

All my very best,
Katie
[Quoted text hidden]

NEWSROOM<HTTPS://WWW.OPENSOCIETYFOUNDATIONS.ORG/NEWSROOM>    **PRESS RELEASE**

# Open Society Foundations Announce 2021 Soros Justice Fellows

| Date | March 31, 2022 |
|---|---|
| Contact | **Communications** |
| | media@opensocietyfoundations.org<mailto:media@opensocietyfounda |
| | tions.org> |
| | +1 212-548-0378 |

NEW YORK—The Open Society Foundations today announced an award of $1.5 million to the 2021 cohort of Soros Justice Fellows. The fellows, a mix of emerging and established leaders, include documentary filmmakers, lawyers, grassroots organizers, policy advocates, journalists, and authors.

Working across the United States, the 17 fellows will take on a range of issues at the core of the Open Society's work such as mass incarceration, surveillance, immigration, asylum, and police violence to ensure accountability in the U.S. criminal justice system.

"Our criminal justice system has long been in crisis," said Tom Perriello, executive director of Open Society-U.S. "We are proud to work with the 2021 class of Soros Justice Fellows, who will add new and fresh ideas, leadership, and creativity to a conversation that this country is currently grappling with across the board."

The new fellows include: a policy advocate who will support the healing of children harmed by detention and deportation; a formerly incarcerated individual who will build a coalition to raise awareness of the discrimination facing women living with violent convictions; a podcaster who will report on the troubling story of how communities are impacted by far-right and paramilitary-aligned sheriffs; a filmmaker who will make a documentary on the ways in which the U.S.'s system of "punishment as justice" perpetuates cycles of harm; a media-maker who will focus on foster

care and the juvenile justice system; an author who examines inequality in America through the prism of sex work; and a journalist who will explore the nexus between gentrification and overpolicing.

"Given the enormous challenges we're facing in our country today, we look forward to the ideas and vision of the 2021 Soros Justice Fellows who are working to produce an effective and fair justice system," said Christina Voight, program operations officer at Open Society-U.S. "We welcome such a talented group at such a crucial moment in history."

To carry out their work, fellows receive a stipend ranging from $57,500 to $127,500 for full-time projects lasting between 12 and 18 months.

The 2021 fellows join over 400 other individuals who, since 1997, have received support through the Soros Justice Fellowships as part of a broader effort to curb mass incarceration and ensure a fair and equitable system of justice in the United States.

## 2021 Soros Justice Fellows

Lis-Marie Alvarado<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships? fellow=lis-marie-alvarado> will use arts-based organizing and cultural healing to work with unaccompanied immigrant children from Central America harmed by detention.

Tiheba Bain<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships? fellow=tiheba-bain> will build a coalition of diverse women, who will use their voices and lived experiences to raise awareness of the discrimination faced by women living with violent convictions.

Willette Benford<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships? fellow=willette-benford> will create the Cost of Dignity Project, which will support and elevate the leadership of Black women impacted by the criminal legal system.

Carlos Alejandro Bracamontes
Norzagaray<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships? fellow=carlos-alejandro-bracamontes-norzagaray> will empower members of the refugee community to become fully-accredited Department of Justice representatives and provide free representation in immigration proceedings in the Boston area.

Cloee Cooper<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships? fellow=cloee-cooper> will develop a deeply reported podcast on how communities are impacted

by far-right and paramilitary-aligned sheriffs.

Monica Cosby<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=monica-cosby> will create a network of women impacted by the criminal legal system to help challenge the harmful narratives surrounding the dichotomy of violent and nonviolent crime in that system and in society at large.

Contessa Gayles<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=contessa-gayles> and Richie Reseda<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=richie-reseda> will create *LIFE + LIFE*, a documentary and visual album that explores the ways in which this country's notion of punishment as justice perpetuates cycles of harm.

May Jeong<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=may-jeong> will write a book, *The Life: Sex, Work and Love in America*, that examines inequality in America through the prism of sex work.

Yusef Presley<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=yusef-presley> will produce a series of short videos that seek to elevate the voices and experiences of youth directly impacted by the foster care and juvenile justice systems in Kansas.

PJ Raval<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=pj-raval> will produce *In Plain Sight*, a docuseries that will reframe the immigrant experience and culture of incarceration, through an exploration of the lives of artists working to resist the migrant detention system.

Leidy Perez-Davis<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=leidy-perez-davis> will help elevate the voices of a network led by asylum seekers and support members to collectively identify the best methods to end the punitive practices and incarceration of asylum seekers.

Veronica Torres<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=veronica-torres> will work to vindicate the rights of the hundreds of people in Arizona prisons who have a viable claim for parole or opportunity for release.

Ashley Torres Carrasquillo<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?fellow=ashley-torres-carrasquillo> will establish a project that seeks to counter the levels of violence and poverty experienced by mainly Black, disabled, and LGBTQ+ youth in public housing in San Juan, Puerto Rico.

Emily Tucker<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?
fellow=emily-tucker> will educate the public about the harm caused by replacing mass
incarceration with mass surveillance, and support efforts to challenge the negative impacts of
mass surveillance on peoples' lives.

Lam Thuy Vo<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?
fellow=lam-thuy-vo> will write articles that explore the nexus between gentrification and
overpolicing, each centered around characters and communities whose stories are contextualized
through data- and documents-driven research.

Kilroy Watkins<https://www.opensocietyfoundations.org/grants/soros-justice-fellowships?
fellow=kilroy-watkins> will create an initiative, Freedom School, to support survivors of police
torture and long-term incarceration in their efforts to productively make their way into free
society.

# READ MORE

**PRESS RELEASE**

### Open Society Foundations Announce 2020 Soros Justice Fellows
The 19 fellows, who hail from eight different states, Puerto Rico, and Washington, D.C., will receive a stipend for

full-time projects to create a more just and equitable society.

DECEMBER 18, 2020

<https://www.opensocietyfoundations.org/newsroom/open-society-foundations-announce-2020-soros-justice-
fellows>

**PRESS RELEASE**

### Open Society Foundations Announce 2019 Soros Justice Fellows
The Open Society Foundations' Soros Justice Fellowships are awarded to individuals working to reform the

criminal justice system in the United States.

SEPTEMBER 27, 2019

<https://www.opensocietyfoundations.org/newsroom/open-society-foundations-announce-2019-soros-justice-
fellows>

September 20, 2022

Ms. Monica Zimbrón
Office of the Inspector General
Department of Children and Family Services
2240 West Ogden Avenue
Chicago, Illinois 60612

Addendum to 7 September 2022 Complaint

1. On or about 7 September 2022 someone made a call to the State Central Register hotline advising that there were threats to the wellbeing of minors living in the home of the complainant's sister.
2. Based on interviews with the complainant and the complainant's sister It appears that the hotline caller advised the State Central Register intake team that the complainant still receives mail at this address, despite no longer living in the home.
3. The State Central Register hotline intake team appears to have determined that the information shared in this report met the threshold for opening an investigation.
4. On or about 8 September 2022 at about 9 p.m. the State visited the home of the complainant's sister.
5. During that visit, the State inquired about the whereabouts of the complainant. The complainant's sister advised the State that the complainant does not live in the home.
6. During that visit, the State interviewed the minors. The State asked the minors to tell them the names of the individuals who lived in the home. The minors answered the State's questions.
7. During the conversation with the complainant's sister, the State asked the complainant's sister how much longer would the complainant's mail continue to be delivered to the home.
8. Based on remarks to the complainant's sister, the State appeared to frown upon the complainant receiving mail at the address. It appears that the State has decided that the receipt of mail at the address meets the threshold for the State to visit the home and interview the family, including the minors in the home.
9. The State asked the complainant's sister if she has maintained communication with the complainant. When the complainant's sister answered affirmatively, the State appeared to frown on the complainant's sister maintaining contact with the complainant. It appears that the State has decided contact between the complainant's sister and the complainant meets the threshold for the State to visit the home and interview the family, including minors in the home.
10. During that visit the State also asked the complainant's sister if the State could look inside the home refrigerator. With that request, it appears that the State had decided that a report about the complainant's mailing address also authorizes the State to expand its investigation beyond the scope of the information it obtained in the hotline call.
11. On or about 9 September 2022, the State visited the elementary school where the minors are students. The State didn't advise the complainant's sister that they would visit the school.
12. Upon returning home, the minors advised their mom, the complainant's sister, of this second interview on school grounds.
13. According to the complainant's sister the State asked the minors about "touching" and brought up the complainant's name.
14. The minors advised the State that they hadn't seen the complainant, they didn't know the complainant's whereabouts. The minors also told the State. "We miss him."

/

15. On or about 10 September 2022 the State called the complainant's sister on the phone advising the complainant's sister that the State visited and re-interviewed the children a second time at their school.

16. The State advised the complainant's sister that there was no outcry. The State advised the complainant's sister that only after the conversations with the minors at the school, did it believe that the complainant doesn't live at the home.

17. On or about 13 September 2022 the complainant's sister visited the State's local office. The complainant's sister requested that the State refrain from visiting her home and refrain from unannounced visits to the school in which they make statements to the minors that suggest to them that the complainant has assaulted or abused them.

18. The complainant's sister reiterated that the complainant doesn't live at the home. The State supervisor made remarks that appear to suggest any support the complainant's sister gives to the complainant would be frowned upon by the State.

19. The State supervisor remarked that the minors "seemed healthy and happy." The complainant's sister advised that the minors "*are* healthy and happy." Since there was no outcry or visit the State advised the complainant's sister that it would begin the process of closing the investigation.

20. This September investigation follows an investigation that commenced 11 February 2022 when the State made their first evening visit to the family. During that visit the State demanded that the complainant leave the home. The State advised the complainant's sister that it would remove the minors from the home if the complainant remained in the home.

21. Toward forcing the warrantless removal of the complainant out of the home, the State enlisted the help of the Chicago Police Department. According to the complainant, the State refused to communicate with the complainant about the catalyst for the visit.

22. At the time the complainant's sister, a nineteen-year-old, two minors and the complainant were residents of the home.

23. To be clear, the complainant, request for expungement of an adverse State ruling had been unresolved for more than six months.

24. To avoid future traumatic incidents from the State on the family, the complainant chose to relocate after the 11 February 2022 incident.

25. A few weeks later in March 2022 someone made a call to the Illinois State Central Register advising the State that there were threats to the wellbeing of the same minors living in the home.

26. In cooperation with the State, the complainant and complainant's sister in March 2022 participated in the requested interviews outlined in Reports of Child Abuse and Neglect, The Investigative Process, Section 300.50.

27. The complainant's sister in March 2022 allowed the State to interview the minors in their bedroom, with the door closed.

28. In May 2022 the complainant and the complainant's sister both received notification that the State determined the investigation that commenced in March 2022 to be "unfounded."

29. In a June 2022 letter the complainant requested that the State Central Register retain the unfounded report and mark the hotline call as intentionally false in its database.

30. At first glance the State actions in September 2022 appear to be in line with policies and procedures put in place toward administering 325 ILCS 5, the Abused and Neglected Child Reporting Act.

31. However, based on the specifics of that law such as 325 ILCS5/7.4 as well as Reports of Child Abuse and Neglect Section 300, here's the question: Should the complainant's mailing address have resulted in the launch of an investigation, which included two interviews with the minors and three interviews with the complainant's sister?

32. After a review of the documents filed in this incident, might the Inspector General determine whether or not the State intake team followed the Intake and the Investigative Process outlined in Reports of Child Abuse and Neglect Section 300? Doesn't this policy require the State Central Register intake team to perform a person search and document locations of all parties as part of the report screening process BEFORE proceeding with interviews named in the hotline call?

33. Did the hotline call meet the criteria required to qualify as a report of abuse or as indicated in Procedures 300.30, Criteria for a Report of Abuse or Neglect?

34. How did the State intake team determine that the hotline call represented a "good faith indication of potential child abuse or neglect," as required the policy as well as the legal statue section 325 ILCS 5/7.4?

35. Another question the complainant and the complainant sister would like to find out is whether or not the March 2022 investigation has been classified as an intentional false report as requested. Is it coded as "FS" in the database?

36. Has the State Central Register forwarded the request to label that March 2022 investigation as an intentional false report to the State's Attorney?

37. The complainant and the complainant's sister respectfully request that the Inspector General review the time line of events for the September visit, the March visit and whether or not policy and procedure were followed with respect to initial report to the State Central Register hotline and the subsequent adverse ruling.

38. Additionally, please review whether remedies extended to this complainant, who based on professional responsibilities appears to fit the State's broad definition of a child care worker, were offered to this complainant.

39. Please compare what has taken place between June 2021 and September 2022 to this complainant and the complainant's family with the policy and procedure outlined in 325 ILCS 5, the Abused and Neglected Child Reporting Act as well as Reports of Child Abuse and Neglect Section 300 and Section 300 Appendix B.

40. On behalf of the complainant and the complainant's sister, please accept my sincere appreciation and thanks for your assistance in answering these questions.

Sincerely,

Cassie M. Chew
Fellow, Center for Media, Crime & Justice
John Jay College

*3*

# CASSIE M. CHEW

Editorial Professional. Policy Wonk. Multimedia Producer. Cybersleuth.

  write_on@hotmail.com

September 7, 2022

Ms. Monica Zimbrón
Office of the Inspector General
Department of Children and Family Services
2240 West Ogden Avenue
Chicago, Illinois 60612

Dear Ms. Zimbrón,

Greetings. I hope that this note finds you well.

My name is Cassie M. Chew. I am a D.C. based freelance journalist who pursues enterprise and investigative reporting projects in the areas of health, education, technology and criminal justice.

In May 2022 I was contacted by one of my sources after this person became the subject of an Illinois Department of Children and Family Services investigation.

Based upon interviews with this person, others knowledgeable of the circumstances of these events, FOIA requests and a study of DCFS Procedures 300 and Procedures 300 Appendix B, the Inspector General might consider comparing the timeline of events with the established process for child abuse and neglect investigations.

To be clear, there may have been critical lapses in information gathering and notification that prevented the individual from receiving a fair and unbiased examination as well as receiving an "expedited" review. These lapses may have resulted in an adverse and unfair judgement.

Might the Inspector General obtain and review the complete, unredacted hard copy file(s) documenting the actions of DCFS staff as well as multidisciplinary team members who have received committee appointments to serve the department's interests?

This individual has authorized me to speak with you to share additional details as well as documents as they become available to me during my ongoing research.

Please ring me at [redacted] with your questions. Thank you.

Sincerely,

Cassie M. Chew
Journalist Fellow
John Jay College
Center on Media, Crime & Justice

**OFFICE OF EMERGENCY MANAGEMENT AND COMMUNICATIONS**

**Chicago Police Department Event Query Report**

| Event Number: | 2204217189 | Type: | ASSTC |
|---|---|---|---|
| Date : | 2022-02-11 20:57:56.0 | Pri : | 3D |
| DG : | 005 | Svc Beat : | 0511 |
| Disp : | | Source : | E |
| Response Level : | | Caller : | |
| Phone : | | Occ Beat : | |
| Address Of Occurrenc : | S PERRY AV | Location : | S PERRY AV |
| Init. Event Type : | ASSTC | Loc Remarks : | AT CORNER |
| Anonymous : | N | RDNumber : | -- |

| Event Chronology - 2204217189 | | | | |
|---|---|---|---|---|
| **Date** | **Wkstn** | **Person** | **Activity** | **Text** |
| Feb 11, 2022 20:52:48 | | | REC | |
| Feb 11, 2022 20:57:56 | PCT35 | | ENTRY | |
| Feb 11, 2022 20:58:14 | PD118 | | DSP | 512 |
| Feb 11, 2022 20:58:38 | PMDT2234 | | ACK | 512 |
| Feb 11, 2022 20:58:43 | PD118 | | ASST | 523R |
| Feb 11, 2022 20:58:45 | PD117 | | AUTPRE | 523R |
| Feb 11, 2022 20:58:45 | PD117 | | ASST | 523R |
| Feb 11, 2022 21:00:39 | PMDT2234 | | ENR | 512 |
| Feb 11, 2022 21:01:27 | PMDT2234 | | ONS | 512 |
| Feb 11, 2022 21:17:38 | PD118 | | ONS | 523R |
| Feb 11, 2022 21:18:14 | PD118 | | ASST | 595 |
| Feb 11, 2022 21:18:17 | PD118 | | ONS | 595 |
| Feb 11, 2022 21:38:20 | PD118 | | ASST | 520 |
| Feb 11, 2022 21:38:23 | PD118 | | ONS | 520 |
| Feb 11, 2022 21:45:05 | PMDT648 | | ACK | 520 |
| Feb 11, 2022 21:45:32 | PD117 | | CLEAR | 595 |
| Feb 11, 2022 21:47:33 | PMDT6483 | | CLEAR | 520 |
| Feb 11, 2022 21:52:28 | PD118 | | AUTPRE | 523R |
| Feb 11, 2022 21:54:46 | PD117 | | CLEAR | 512 |
| Feb 11, 2022 21:54:46 | PD117 | | CLOSE | |
| | | | RMKS | *** WIRELESS CALL *** |

Page 1 of 2

| Event Chronology - 2204217189 | | | | |
|---|---|---|---|---|
| **Date** | **Wkstn** | **Person** | **Activity** | **Text** |
| | | | RMKS | DCFS WORKER IS VISITING HOME AND MALE IS GIVING HER A HARD TIME BECAUSE SHE IS ASKING HIM TO LEAVE HOME OR THAT CHILDREN MUST LEAVE HOME DUE TO HIM HAVING PREVIOUS SEXUAL ABUSE OF CHILD ON HIS FILE CALLER WAITING IN SILVER NISSAN NFI |

| Unit Summary - 2204217189 | | |
|---|---|---|
| **Unit** | **Dispatch** | **Clear** |
| 523R | Feb 11, 2022 20:58:45 | Feb 11, 2022 21:52:28 |
| 523R | Feb 11, 2022 20:58:43 | Feb 11, 2022 20:58:45 |
| 512 | Feb 11, 2022 20:58:14 | Feb 11, 2022 21:54:46 |
| 595 | Feb 11, 2022 21:18:14 | Feb 11, 2022 21:45:32 |
| 520 | Feb 11, 2022 21:38:20 | Feb 11, 2022 21:47:33 |

9489 0090 0027 6424 6195 27

## STATE OF ILLINOIS
## DEPARTMENT OF CHILDREN AND FAMILY SERVICES
## ADMINISTRATIVE HEARINGS UNIT

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | )  DKT#  2022-E-03473 |
| Kilroy Watkins | )  AHU#  56-1450 |
| Appellant | )  SCR#  2482220-A |

### DISMISSAL ORDER

**THIS CAUSE COMING ON TO BE HEARD** by the Administrative Law Judge, pursuant to Abused and
Neglected Child Reporting Act, 325 ILCS 5/7.16, it is hereby ordered that the case is dismissed for the following
reason:

> Issue is Concurrent Jurisdiction.
> Your request to appeal the Department's indicated finding is dismissed based on the fact that you have a
> pending juvenile court or criminal court case involving the same facts or circumstances as your
> Administrative Appeal. You have 60 days after a final decision has been issued by the circuit court in that
> juvenile court or criminal court case to file a written request for an appeal of the indicated finding including
> copies of court documents showing that the juvenile or criminal case has been concluded. You will not be
> able to challenge the indicated finding if a final judgment is issued against you in the juvenile court or
> criminal court case which finds you responsible for child abuse or neglect. Failure to file a written request
> for an appeal of the indicated finding within 60 days after a final decision has been issued by the circuit
> court may result in the loss of your right to appeal.

**Comments:**

Department Motion to Dismiss granted. Criminal charges pending in related case under case number 22 CR
0576301.

**This order is a final administrative decision. If you are not satisfied, you may seek judicial review of this
decision under the Administrative Review Law, 735 ILCS 5/3-101 et seq. (West 2002), by filing a complaint
for administrative review in the circuit court. The complaint for administrative review must be filed within 35
days of the date this decision was served on you. This decision was served on you when it was deposited in the
United States mail on** November 07, 2022 **.**

**ENTERED:**

*Carmen Love*

Love, Carmen                                              October 31, 2022
Administrative Law Judge                                  Date

AHU#   56-1450

A copy of this **ORDER** has also been served, by U.S. MAIL/EMAIL, personal delivery or Inter-agency mail, upon:

Appellant/Representative -            Kilroy Watkins - pro se

Department Representative -            Erica Marshall

State Central Register Administrator -

## CERTIFICATE OF SERVICE

I,      Debra Martin      , certify that I served a copy of the attached order to the addressee by depositing the same in the United States with proper postage prepaid and properly addressed or by email in accordance with the Administrative Procedure Act, 5 ILCS 100/10-25, on  November 07, 2022 .

*Debra Martin*

A NOTARIZED REQUEST
FOR INFORMATION — DCFS

I, Kilray Watkins, is requesting any
and all information, documents, emails,
files and/or handwritten notes, in regards
to File #2482320A, in association with
investigation #2365779C. I am a party/
subject to this matter and in accordance
with the Policy and Procedures, as well
as the Illinois Administrative Codes,
I am entitled a copy of the requested
files.

I am an American Citizen and must
be afforded my fundamental rights to
due process of law. I am currently
housed in the Cook County Jail, at
2700 So. California Ave, Chicago, IL 60608,
My institutional identification Number
is #20220427033.

Federal law provides that it is a crime to
violate the Constitutional Rights of a citizen
under the Color of Law.

I, Kilray Watkins, sworn under the
penalty of perjury that the above-mention-
ed facts are true and correct.

/s/ Kilray Watkins
AFFANT.

SUBSCRIBED AND SWORN TO
BEFORE ME ON _____ THIS DAY
OF 10/20 _____, 2022



CIVILIAN OFFICE OF POLICE ACCOUNTABILITY
INTEGRITY ● TRANSPARENCY ● INDEPENDENCE ● TIMELINESS

Kilroy Watkins
#2022042733
2700 S. California
Chicago, IL 60608

October 4, 2022

Dear Mr. Kilroy Watkins:

Thank you for your correspondence. The Civilian Office of Police Accountability
(COPA) serves as the civilian oversight agency for the Chicago Police Department. We
are only able to investigate allegations of police misconduct from the Chicago Police
Department members. Unfortunately, your incident occurred outside of our
jurisdiction. You can contact the Harvey Police Dept. Internal Affairs Office for
guidance as to how to handle this complaint against their police officers. Their address
is:

Harvey Police Dept. Internal Affairs
15301 Dixie Highway
Harvey, Illinois 60426

The best of luck.

Regards,

Dakeita Miller
Case Liaison

Exhibit- 17

11/14/2022

Kilroy Watkins
20220427033 2700 S California Ave
Chicago IL 60608

RE: PUBLIC RECORDS REQUEST of November 03, 2022, Reference #
R000976-110322

Dear Kilroy Watkins,

The Harvey City Clerk's Office received a public information request from you on
November 03, 2022. Your request mentioned:

**"Harvey Police Dept. Internal Affairs 15301 Dixie Highway Harvey, IL 60426
RE Complaint Against Officers Dear Internal Affairs, The Office of the
Civilian Office Police Accountability (COPA), advised me to reach out to your
office for guidance on the question of how to file s complaint against a Harvey
Officer and where should the complaint be sent for review. Wherefore, any
and all information you are able to provide would be greatly appreciated .
Pursuant to the ILL. Freedom of Information Act. 5 ILCS 14011 et. seq"**

The City is required to provide records in accordance with the provisions of the
Act. The City, However, is not required to answer question or to explain the
meaning of records in response to a FOIA (5ILCS 140/3.3) provides that "this Act
is not intended to compel public bodies to interpret or advise requester as to the
meaning or significance of the public record."

Please send the City a request for an identifiable public record.

If you have any questions, please contact my office at . Thank you for your
attention.

Sincerely,

Liliana Gonzalez
FOIA Officer

State of Illinois )
                 ) ss
County of Cook   )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT—SIXTH DISTRICT

THE PEOPLE OF THE STATE OF )
ILLINOIS,                  )      NO. 22CR0576301
                 Plaintiff, )      NO. 22600175901
        vs.                )      NO. 22600176201
                           )
KILROY WATKINS,            )
            Defendant,     )

## MOTION TO TAKE JUDICIAL
## NOTICE

NOW come, Kilroy Watkins, Defendant, by and through himself, and respectfully move this Court to take judicial notice, in the interest of justice, fundamental fairness and due process of law, see; Daniel v. Cook Cty., 833 F.3d 728, 742 (7th Cir. 2016)

1. Defendant was arrested on April 24, 2022 and held in custody at the Harvey Police Department ('HPD') was held in lock-up until the morning of April 27, 2022, was not permitted to contact attorney, Steve Becker.

1.

2. Prior to being arrested Defendant was Not engaged in any illegal activities nor was there any outstanding warrants pending for his arrest.

3. On the morning of April 27, 2022, Defendant was rushed from HPD lock-up to Markham Courthouse for Bond Court, where Defendant once again requested his private counsel and was ignored.

4. When Defendant wrote Assistant Public Defender ('APD') Nicala Carter-WoolFolk of the Cook County Public Defender Office (CCPD'), seeking an explaination for why she or the Court did not make any effort to contact Defendant private retained counsel, to represent him at bond court, APD Carter-Woolfolk, stated in her response that, she did Not represent Defendant, she just interviewed me prior to the Bond Hearing, see Attach Letter's

5. Since Defendant bond hearing, he has remained in custody inside of Cook County Jail, with a no bond. All court appearences has been by zoom, where Defendant's microphone/speaker is immediately muted after he states his name. Defendant is handcuffed with his hands behind him, at all times, while on zoom and can

2.

not raise his hands to object or
address this Court, as this Court
have suggested.

6. Defendant currently remain in custody
in violation of Illinois Constitution 1970,
article I, § 9, where he was not offorded
counsel of his choice, see United States v.
Gonzalez-Lopez, 126 S. Ct. 2557 (2006) (the
right to counsel of choice, however, commands not
that a trial be fair, but that a particular guarantee
of fairness be provided — to wit, that the accused
be defended by the counsel he believes to be
best, see Crawford v. Washington, 124 S. Ct. 1354;

7. Defendant should have been offorded the
right to be represented by his private
retained counsel, Steve Becker, at the
Bond Hearing on 4/27/2022, Defendant
requested his counsel, prior and during
bond hearing, but was ignored and denied.

8. Defendant current No bond status is
void, as well as any and all other findings
entered by Judge Luciano Panici on 4-27-2022,
where bond hearing was held in direct

3.

violation of the Ill. Const. 1970
art. I § 9, (The court then concluded that
this Sixth Amendment violation was not
subject to harmless-error review. See id.,
at 932-935.

9.) Erroneous deprivation of the right to counsel of
choice, "with consequences that are necessarily
unquantifiable and indeterminate, unquestionably
qualifies as 'structural error.'" Sullivan v. Louisiana,
508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182. It "defies
analysis by 'harmless error' standards" because it
"affects the framework within which the trial
proceeds" and is not "simply an error in the trial
process itself." Arizona v. Fulminante, 499 U.S. 279, 309-
310, 111 S.Ct. 1246, 113 L.Ed.2d 302.

10) On the date of Defendant arrest, Defendant
was recorded on the arresting officer body cam,
requesting to contact his private attorny; while
in custody at HPD and during pre-interrogation,
Defendant made a request to Det. Baptiste,
that his counsel be contacted; Prior to going
before Judge Panici for bond court Defendant
requested his counsel to be contacted from APD
Carter-Woolfolk, who informed the judge and
States Attorney on zoom, that Defendant was
represented by private counsel, yet at no

time did anyone, from law enforcement, State's Attorney Office, Public Defenders Office and/or Cook County Sheriff Office, attempt to contact Defendants lawyer. see, Excerpt of Transcript of 4-27-22

11.) Furthermore, Judge Panici was constitutional mandated to stop the proceedings, as soon as he learned Defendant was being represented by private counsel, and direct any court officer to contact counsel.

12.) In addition, under the Public Defender's act, 55 ILCS 5/3-4006 'Unauthorize Appointment of the Office of the Public Defender, the judge could not appoint the Public Defenders Office to represent Defendant during bond court because Defendant were under represent- ation of privately retained counsel.

13.) Judge Panici, as well as others who derives there power from under the color of law, violated Defendant's Sixth Amendment right to counsel of choice and such constitutional error is a "structural defect" and "defy analysis by 'harmless-error' standards" because they "affect the framework within which the trial proceeds," and are not "simply an error in the trial process itself" Neder v. United States, 527 U.S. 1, 7-9, 119 S.Ct. 1827, 144 L.Ed. 2d 35 (1999).

14.) As a direct results of the flagrant mis-
conduct and numerous, State and Federal
constitutional violations by a number of
state officials and local law enforcement,
Defendant has brought this matter to the
United States District Court, see, Kilroy Watkins
v. Sandra Baptiste, et al., No. 22 CV 06377

15.) To Further compound Defendant's Sixth
Amendment constitutional violation; denied
counsel of his choice, according to Assistant
Public Defender Nicola R. Carter Woolfolk, she
did **not** represent Defendant at the April
27, 2022 Bond hearing nor did the Cook
County Public Defender Office, see Attach Letters

16.) The Report of Video Conference Proceedings
of Defendants' Bond Hearing on April 27, 2022,
before Judge Panici, reflect APD Carter-Woolfolk
as only counsel of record and not Defendant
private retain counsel, Steve Becker, in fact,
Mr. Becker did not filed his appearence on
behalf on Defendant until May of 2021.

17.) In light of APD Carter-Woolfolk and her
office conceding that they did not represent

6.

Defendant herein, at the April 27th Bond Hearing, this Court is bound by clear U.S. presidence, in United States v. Gonzalez-Lopez, 126 S.ct. 2557; Crawford v. Washington, 541 U.S. 36, 61, 124 S.ct. 1354, 158 L.Ed. 2d 177; and also Neder v. United States, 527 U.S. 1, 7-9, 119 S.ct. 1827, 144 L.Ed. 2d 35(1999); to decide in light of Defendants Sixth Amendment right to counsel of his choice being violated (i.e. as well as Defendants right to counsel at bond hearing, in general) and with The Office of The Cook County Public Defender ('OCCPD') conceding that they did not represent Defendant, at the bond hearing on 4-27-22, such constitutional errors as the denial of counsel of choice or otherwise, has been identified by the high court as a "structural defects," therefore, this Court must decide the following(1) whether Defendant was, in fact, deprived his Sixth Amendant right to counsel of his choice and/or right to counsel during bond hearing, (2) In light of the Supreme Court decision reached in 'Gonzolez-Lopez', any and all previous findings entered by Judge Panici on 4-27-23 are void, including, any probable cause ruling, (3) Whether all evidence presented as preoffer or offer of proof by the State is

7.

void and/or invalid, (4)whether any and all criminal indictment(s) are invalid;(5)Whether this Court lacks subject matter jurisdiction and personal jurisdiction (6)Since the United States Supreme Court held "a structual defects," "affect the Framework within which the process," trial proceeds," and are not "simply an error in the trial process itself, this Court must decide whether to enter an order dismissing all criminal/Felony charge(s), and immediately release Defendant from custody.

(18) In the alternative, in the rare likelihood that this Court don't agree with Defendant's Sixth Amendment right to counsel argument, Defendant maintains that his current NO bond status can not stand, as the State argued for, citing 725 ILCS 5/110-4(a), when the State failed to file a "verified petition by the State" and there was no finding, as required by section 110-6.1, that "no condition or combination of conditions *** could reasonably assure the physical safety of any other person or persons." 725 ILCS 5/110-6.1(b)(3)(West 2016)

While the court did recite the statutory words required in both sections that "the proof is evident or the presumption great that the defendant has committed an offense for which a sentence of imprisonment may be imposed as a consequence of conviction", there was no evidence presented to support such a finding.

(19.) The First District of the Court of Appeals held, "that by the State simply focusing on the disturbing facts of the alleged crimes and the evidence that it believed it had to prove its case, was not enough to deny defendant bail, see, People v. Gil, 2019 IL App (1st) 192419

(20) Because Defendant herein, were charged with non-probationable felony offense(s), the State was required to file a verified petition before bail can be denied to a defendant, section 110-6.1 requires three specific factual findings, by the court before bail can be denied, which did not occur in the present case.

9.

21.) At the time of Defendant's arrest he was employed at a 'Veteran Transitional Housing' (i.e. InnerVoice co.); St. Leonards' Ministries Transitional Housing for Ex-Offender's; Advisory committee/member with the Educational ('U of I') Justice Project ('EJP'); Student and Learning Fellow at Northeastern Illinois University ('NIU') and the Prison + Neighborhood Arts/Education Project ('PNAP with 'NIU'); Soros Justice Fellow with the Open Society Foundation (i.e. recipient of a $100,000 grant in support of Freedom School project (rescinded this month, due to incarceration). GrassRoots Alliance grant recipient of $5,000 for Community Political Education; Chicago Torture Justice Center ('CTJC') Survivors + Family Advisory Committee and Speaker's Bureau (i.e. Speak to Chicago Public School students as a part of a curriculum about the History of Chicago Police Torture Scandal).

WHEREFORE, Defendant Respectfully Pray This Honorable Court Take Judicial Notice of, All Of Defendant's Constitutional Violations, and enter order vacating the April 27, 2022 hearing, and enter order consistant with U.S. Court decision.

/s/ Kilroy Watkins
2700 S. California Ave.
Chicago, IL 60608

10.

STATE OF ILLINOIS )
                   ) SS:
COUNTY OF COOK )

## AFFIDAVIT

I, Kilroy Watkins, sworn under the penalty perjury that the following facts are **true** and correct:

1. I am currently confined at the Cook County Jail, under institution #202204027033

2. Since the date of my arrest on 4-24-2022, I had made numerous request to consult with my private counsel, Steve Becker, who has been retained since 2020, to the present.

3. At no time during my arrest and detention at the Harvey Police Department ('HPD'), did anyone attempt to contact my private counsel or afford me a 'real' opportunity to reach counsel myself.

4. Furthermore, when I was transported to the Markham Courthouse, at no time did the Cook County Sheriff, Cook County Public Defender, Cook County States Attorney Nor Cook County Bond Court Judge, attempt to contact my attorney, after all were made personally aware that I requested counsel to represent me.

I, Kilroy Watkins, sworn under the penalty of perjury the above-mentioned facts are true and correct, pursuant to 735 ILCS 5/1-109.

/s/ Kilroy Watkins
AFFiant



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS
www.iardc.org

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600 (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523 (800) 252-8048
Fax (217) 546-3785

Kilroy Watkins, #20220427033
2700 South California
Chicago, IL 60608

By regular mail

Chicago
October 28, 2022

Re:   Nicala Rosalyn Carter
in relation to
Kilroy Watkins
No. 2022IN03648

Dear Mr. Watkins:

We have received your complaint regarding Nicala Carter.

The responsibilities of this office relate primarily to investigating and prosecuting Illinois attorneys for alleged professional misconduct. When we have sufficient evidence of serious misconduct by an attorney, we may initiate disciplinary charges against the attorney. Our proceedings may result in a lawyer's disbarment or suspension from the practice of law. Given our limited duties, we are generally unable to intervene in, review or affect legal matters that were, are, or may be the subject of court proceedings.

Based on the information provided, we have determined that we do not have sufficient evidence indicating possible misconduct to warrant any action. According to Ms. Carter and Ms. Mallor of the Public Defender's Office, the Public Defender's Office did not represent you at the April 27, 2022 hearing and, based on the available evidence, we would be unable to prove misconduct related to your allegations. Further, any allegations that your Constitutional rights were violated must be addressed in court rather than through the attorney disciplinary process.

Accordingly, we have determined that your complaint does not provide a sufficient basis for any action by this agency.

Truly yours,

*Karyn A. Bart*

Karyn A. Bart
Senior Counsel
ARDC Intake Division

KAB:tp
MAINLIB_#1556450_v1



**Law Office of the**
**COOK COUNTY PUBLIC DEFENDER**

69 W Washington, Suite 1600, Chicago, IL 60602 • (312) 603-0600
Sharone R. Mitchell, Jr. • Public Defender

October 6, 2022

Kilroy Watkins
#20220427033
2700 S. California Ave.
Chicago, IL 60608

Dear Mr. Watkins,

I am in receipt of the letter you sent to the Law Office of the Cook County Public Defender, addressed to Sharone R. Mitchell, Jr. In your letter, you ask for clarification regarding the letter that Assistant Public Defender Nicala R. Carter-Woolfolk. In her letter, Ms. Carter-Woolfolk explained to you that **this office did not represent you at your bond hearing.** Instead, a private attorney filed an appearance. As such, we have no information to provide you regarding your case. To the extent you seek any additional information, we are unable to provide you with same.

Furthermore, your letter states "if necessary, I could make my request pursuant to the Freedom of Information Act." To the extent you wish to make a formal FOIA request, please address it to my attention. However, please note that any and all documents associated to your case are outside the scope of FOIA. FOIA *only* applies to public records. Documents associated to your specific case are not FOIA-able because they are not public records.

Best,

Emily L. Mallor, Esq.



**Law Offices of the**
**COOK COUNTY PUBLIC DEFENDER**
16501 SOUTH KEDZIE · DISTRICT 6 · MARKHAM, IL 60428 · (708) 232-4360 · FAX (708) 232-4264
SHARONE R. MITCHELL, JR. · Public Defender

June 27, 2022

Kilroy Watkins
2022-0427033
Post Office Box 089002
Chicago, Illinois 60608

Mr. Watkins:

I received your letter dated June 10, 2022, and I went back and looked at my call book for April 27, 2022. I did interview you for a bond hearing on that date, but when it came time for the bond hearing, a private attorney filed an appearance and took it from there.

The Office of the Public Defender was never formally appointed to your case, and I have no further information about your case after that date.

Please contact your paid attorney as there is nothing further that I can do for you.

Sincerely,

Nicala R. Carter-Woolfolk
Assistant Public Defender

1  STATE OF ILLINOIS )
                     )  SS.
2  COUNTY OF COOK    )

3    IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
         COUNTY DEPARTMENT - SIXTH DISTRICT

4
   THE PEOPLE OF THE STATE OF  )
5  ILLINOIS,                   )
                               )
6              Plaintiff,      )
                               )
7        vs.                   )  No. 22600175901
                               )  No. 22600176001
8  KILROY WATKINS,             )
                               )
9              Defendant.      )

10        REPORT OF VIDEOCONFERENCE PROCEEDINGS had at

11  The hearing of the above-entitled cause, before the

12  HONORABLE LUCIANO PANICI, one of the judges of said

13  Court, on the 27th day of April, A.D., 2022.

14  <u>APPEARANCES:</u>

15      HON. KIMBERLY FOXX,
        State's Attorney of Cook County, by:
16      MS. DEBORAH SERIKI,
        MS. BRIDGET O'BRIEN,
17      Assistant State's Attorneys,
        appeared on behalf of the People;

18

19      MR. SHARONE MITCHELL, JR.,
        Public Defender of Cook County, by:
20      MS. NICALA CARTER-WOOLFOLK,
        Assistant Public Defender,
21      appeared on behalf of the Defendant.

22

23
    IVY SCHAEFER
24  Official Court Reporter
    CSR: #084-004662

1

1   1994, Judge.  He's also in college.  I believe -- no,

2   he's received his associate's degree in liberal arts

3   from Lincoln Trail Community College, and he's working

4   on a bachelor's degree at Northeastern Illinois

5   University.  Judge, he's currently a student there

6   majoring in community studies and law.  He has about

7   24 credits to earn before he can graduate in

8   September.  He's due to graduate in September of 2022.

9                Judge, we're asking for the lowest bond

10  possible.  He tells me that he has a private attorney,

11  Steven Decker, but he was unable to reach Mr. Decker.

12  So, hopefully, he can get a phone call and reach

13  Mr. Decker.

14       MS. SERIKI:  Additionally, your Honor, the

15  State would be seeking special conditions of bond for

16  the defendant to surrender any FOID or CCL licenses or

17  firearms to his local police department; for him to

18  not possess any dangerous weapons; and additionally,

19  your Honor, for the defendant to have no contact with

20  the victim or any family members of the victim.  Also,

21  for the defendant to have no contact with anyone under

22  the age of 18 years of age, and not to go to the CW's

23  home, work, or school.

24                Additionally, your Honor, with this first

IN THE CIRCUIT COURT OF Cook County, ILLINOIS
COUNTY DEPARTMENT-SIXTH DISTRICT

THE PEOPLE OF THE STATE OF  }
ILLINOIS,                    }
                  Plaintiff  }  No. 22CR0576301
        vs.                  }  No. 2260017590I
                             }  No. 2260017601
KILROY WATKINS,              }
            Defendant,       }  Judge Geraldine D'soza

## NOTICE OF FILING

TO:
Clerk of Court            Ryan Galligher
Markham Courthouse        Assistant States Attny
16501 S. Kedzie Parkway   Markham Courthouse
Markham, IL 60426         16501 S. Kedzie Parkway
                          Markham, IL 60426

Please take notice that on April 24, 2023
Defendant, cause to be filed with the Clerk
of the Court at Markham CourtHouse, the
following document(s): Motion to Take Judicial
Notice, Attach Exhibit(s).

                        Isl Kilroy Watkins
                        #20220427033
                        2700 S. California Ave.
                        Chicago, IL 60608



NEOPOST
03/31/2023
US POSTAGE **$011.64Ⓠ**
FIRST-CLASS MAIL
ZIP 60608
041M11297257



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**®

7019 1120 0002 2154 0092

23cv2273
Judge Seeger
Magistrate Judge Cummings
PC 1/RANDOM

*Prisoner Correspondence*
*Clerk of The U.S.District Court*
*United States Courthouse*
*219 South Dearborn Street*
*Chicago, IL 60604*



04/11/2023-48

**RECEIVED**
APR 11 2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

*KILROY WATKINS*
*#20220427033*
*Cook County Jail*
*2700 So. California Ave.*
*Chicago, IL 60608*

*Legal Mail*



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Prisoner Corresponde
U.S. Dist. Clerk
219 So. Dearborn
Chicago, IL 60604

9590 9402 5311 9154 8125 89

2. Article Number *(Transfer from service label)*

7019 1120 0002 2154 0092

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DE**

A. Signature

X

B. Received by *(Printed Name)*

D. Is delivery address different from i
If YES, enter delivery address be

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
  sured Mail Restricted Delivery
  ver $500)

Watkins- 36